THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY J. LEE, Defendant-Appellant.
Third District No. 3—91—0789

Opinion filed April 22, 1993.

Steven Clark, of State Appellate Defender's Office, of Chicago, for appellant.

Raymond Kimbell III, State's Attorney, of Galesburg (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Following a jury trial, the defendant, Terry J. Lee, was convicted of attempted murder, armed violence, and unlawful use of weapons (720 ILCS 5/8—4(a), 9—1, 33A—2, 24—1(a)(7) (West 1992)). He was subsequently sentenced to concurrent terms of 23 years for attempted murder, 23 years for armed violence, and 4 years for unlawful use of weapons. The defendant appeals, and we affirm.

The following evidence relevant to the issue raised by the defendant was adduced at trial. Dwayne Matchem testified that early in the morning of May 2, 1991, he drove the defendant, the defendant's brother, and a third man to Anthony Powell's home. With a stick in hand, the defendant went inside and was thrown out. The defendant then returned to the car, took a sawed-off shotgun from under a blanket, went back toward the house, and yelled "Anky," which was Powell's nickname. Matchem then heard a shot. The defendant returned to the car and Matchem drove away.

Teresa Jape, who lived with Powell and was the mother of their child, testified that Powell answered a knock on the door. She then heard noise. After someone left and came back, it sounded like a rocket hit the house. She later observed that the living room door and storm door had been shot.

The State called Anthony Powell as a witness. Outside the presence of the jury he told the court that he did not want to testify. At the prosecution's request, he was declared a hostile witness. Before the jury, Powell testified to his name and said he had no nicknames that he could remember. He stated that on the night in question, he was at home with Teresa Jape and their baby. He recalled getting ready to retire for the evening. He said he could not recall a knock on the door or his asking who was there. He then said he did not go to the door. Powell also said he did not recall seeing anyone with a stick in his hand. Powell then stated that he did not want to testify and would not answer a series of questions posed by the prosecutor.

Galesburg police officer David Clague testified concerning a written statement he took from the defendant on the afternoon following the instant offense. The defendant told Clague that he had given Powell $100 for the purchase of stereo speakers, but Powell never gave him the speakers. The defendant told his friend, Dwayne Walker, of how Powell had cheated him. He also told Walker that he was hoping to scare Powell into returning the money. Walker and the defendant then picked up a sawed-off shotgun from an unknown black male and drove to Powell's residence.

The defendant further said that he approached the front door carrying a stick. He knocked, identified himself as "T," and asked to speak with "Anky." Powell opened the door and invited him in. After a brief discussion, the defendant dropped the stick and entered the house. Once he stepped inside, Powell grabbed his arm. The defendant felt something brush against his leg and saw that it was wrapped in a blanket or towel. He believed it may have been a gun. He then jerked away from Powell's grasp, which caused him to fall on his back outside the door. He then got up, ran back to the car, grabbed the shotgun, and walked back to the house. He said he saw Powell standing with the door opened. As the defendant began to squat down on his knees, Powell started to shut the door. The defendant then fired the shotgun at the door. After firing one shot, the defendant ran back to the car, got in, and returned to the Walker residence, where he picked up his brother and another friend.

Clague testified that he again interviewed the defendant on the following day. After being informed that no one believed his story

about the stereo speakers, the defendant immediately stated that Powell had been selling him crack cocaine for about three weeks prior to the incident. He said that on the night in question Powell had told him that if he wanted to make some money, Powell knew of a white man that was willing to buy five rocks of cocaine for $100. The defendant then accompanied Powell to an unknown residence. Powell exited the car with the cocaine and failed to return after about 10 or 15 minutes. The defendant told Clague that the rest of his story concerning the shooting was the truth.

Clague further testified that as a result of the search of Powell's residence, he found only a long stick behind the front door.

Powell was again recalled by the prosecution. Outside the presence of the jury, he again refused to answer questions. He gave no reasons for refusing to answer. Even after the court informed him that he could be held in contempt, Powell refused to answer a series of questions put to him by the prosecutor. The court then inquired of Powell whether there was a reason he refused to testify. Powell responded that there was, but that he would not give it. Powell said that he would tell the judge alone. The judge responded that Powell must state his reasons on the record. Powell refused to do so. Thereafter, the judge found Powell in contempt of court and set sentencing for a later time.

Powell's written statement was admitted into evidence over the defendant's objection. In relevant part, Powell's statement indicated that he was at his girlfriend's home, almost asleep, when a man known to him as "Lazy T" came to the door with a stick, asking where Powell's friend was. When Powell went to the door and told him that he had nothing to do with his, "[Lazy T's] business," "Lazy T" raised his stick. Powell then reached for a walking stick he kept behind the door. "Lazy T" ran to the car, returned about five minutes later, knocked on the door, and said he wanted his money. Powell told him that he had nothing to do with it. "Lazy T" then "took off running and fell to his knees and up come this gun and I closed the door and pow, he let it go. He shot it once." According to Powell's statement, "Lazy T" then ran back to the car and took off.

The defendant testified on his own behalf. His testimony was very similar to the first statement he gave Officer Clague. However, at trial the defendant stated that Powell had held what the defendant had thought was a shotgun wrapped in a blanket against his side. The defendant also testified that he got the shotgun because he was angry and only wanted to scare Powell. According to the defendant, as he ran towards Powell's house with the shotgun, Powell tried to slam the

door but it came open. The defendant slipped on the grass, fell to his knees with his finger on the trigger, and the gun fired. The defendant denied telling Clague about the sale of rock cocaine.

On appeal, the defendant argues that the trial court committed reversible error in permitting the substantive use of Powell's prior statement pursuant to section 115—10.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—10.1 (West 1992)).

Section 115—10.1 permits the use of a prior inconsistent statement as substantive evidence if the prior statement is inconsistent with the witness' testimony at trial, the witness is subject to cross-examination concerning the statement, and the statement is proved to have been signed by the witness. The defendant argues that Powell's refusal to testify was not inconsistent with his prior statement and that his refusal to testify was "virtually an assertion of his fifth amendment privilege."

It is well settled that a determination of whether a witness' prior testimony is inconsistent with his present testimony is left to the sound discretion of the trial court. (*People v. Flores* (1989), 128 Ill. 2d 66, 538 N.E.2d 481.) Furthermore, the definition of inconsistency does not require a direct contradiction, but only a tendency to contradict the witness' present testimony. *People v. Hastings* (1987), 161 Ill. App. 3d 714, 515 N.E.2d 260.

■ Here, Powell did not refuse to answer all the questions the prosecutor asked him. Rather, he gave his name, his girlfriend's name, his address, and testified that he was living with his girlfriend and their baby at that address on the night in question. He also said that he was getting ready to go to bed in the early morning hours of May 2, 1991. However, he further testified that he did not recall hearing a knock on his door and did not recall going to the door and asking who was there. He then testified that he did not go to the door. We find that this testimony was directly contradictory to his previous written statement that there was a knock on the door, that he answered the door, and that the defendant was at the door and subsequently shot a gun. Accordingly, the trial judge did not abuse his discretion in determining that Powell's prior written statement was inconsistent with his testimony at trial and his professed memory loss. The court therefore properly admitted the entire statement. See *People v. Flores* (1989), 128 Ill. 2d 66, 538 N.E.2d 481 (wherein the court held that the trial judge's decision that a witness' professed memory loss was inconsistent with his previous statement was found not to be an abuse of discretion).

We also find unconvincing the defendant's argument that Powell's alleged memory loss and refusal to answer questions were essentially an assertion of his fifth amendment privilege.

Initially, we note that this case is distinguishable from *People v. Redd* (1990), 135 Ill. 2d 252, 553 N.E.2d 316, which is relied on by the defendant. In *Redd*, a witness testified only to his name and thereafter explicitly refused to answer any other questions on fifth amendment grounds. Such was not the case here, where Powell never mentioned the fifth amendment and never suggested that any answers to the questions asked would somehow incriminate him.

The defendant also argues that Powell's answers could have possibly incriminated him by showing that Powell had stolen money from the defendant, or that he had taken cocaine from the defendant without paying for it, or that Powell may have had a gun at the time he threw the defendant out of his house. The problem with the defendant's argument is that the alleged criminal conduct on Powell's part is based on the defendant's statements, not Powell's.

In his statement to police, Powell made no self-incriminating statements. Furthermore, after hearing the questions the prosecution posed to Powell, the trial judge determined that none of the questions which Powell refused to answer tended to incriminate him. We note that none of the questions dealt with the alleged failure to deliver a stereo, with the alleged possession of cocaine without paying the defendant, or with the alleged possession of a gun at the time that Powell threw the defendant out of his house. We therefore agree with the trial judge's assessment and decline to assume that Powell's claimed memory loss and refusal to answer amounted to his claiming a fifth amendment privilege.

For the foregoing reasons, the judgment of the circuit court of Knox County is affirmed.

Affirmed.

McCUSKEY, P.J., and STOUDER, J., concur.