THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHNNY DEWAYNE GRAYSON, Defendant-Appellant.

Fourth District   No. 4—99—0862

Opinion filed April 10, 2001.

COOK, J., dissenting.

Daniel D. Yuhas, Jenifer L. Johnson, and Gabriel Racz, all of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and David A. Hibben, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In September 1999, a jury convicted defendant, Johnny Dewayne Grayson, of aggravated battery (720 ILCS 5/12—4(a) (West 1998)) and domestic battery (subsequent offense) (720 ILCS 5/12—3.2(a)(2) (West 1998)). In October 1999, the trial court granted defendant's posttrial motion to set aside the aggravated battery conviction, finding that the State had failed to prove that defendant caused great bodily harm. The court then sentenced defendant to two years in prison on the domestic battery conviction and ordered him to pay $200 for his court-appointed attorney, pursuant to section 113—3.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113—3.1 (West 1998)).

Defendant appeals, arguing that (1) the State failed to prove beyond a reasonable doubt that he did not act in self-defense; and (2) the trial court erred by (a) admitting into evidence, under section 115—10.1 of the Code (725 ILCS 5/115—10.1 (West 1998)), a tape recording of the victim's 911 call and a witness' written statement to the police, and (b) ordering him to pay $200 for his court-appointed attorney. We affirm in part, vacate in part, and remand with directions.

## I. BACKGROUND

At defendant's trial, Jesse Fullilove, defendant's brother, testified

that on the evening of April 16, 1999, he and defendant were playing cards with their sister, May Grayson, at her house. They were playing for money, and Jesse had been winning more than defendant and May. Around 6 p.m., defendant grabbed Jesse's money and then Jesse's nose somehow "got bumped." Jesse stated that he could not recall how it happened, although he "might have bumped [his] nose on the coffee table rail." He also stated that he had not made any physical contact with defendant prior to his nose being broken. Jesse and May then left to go to the hospital.

After leaving the hospital, Jesse and May went to defendant's house, where Jesse called 911. Jesse testified as follows regarding his conversation with police on the night of the incident:

"Q. [PROSECUTOR:] What, if anything, did you tell [the police] about your nose?

A. [JESSE:] My nose was broke[n].

Q. Did you tell them how that happened?

A. I told them how I thought it happened.

Q. What did you tell them about your nose?

A. My nose was broken and I told them I thought [defendant] broke it because I wanted my money back.

Q. How did you tell them your nose was broken?

A. I told them—I think I told them [defendant] hit me in the nose.

* * *

Q. And you told the officers that evening that [defendant] hit you in the nose?

* * *

A. I don't know whether I stated that. I said my nose was broke[n]. I didn't say he hit me in the nose. I don't know. I might have. I know when I got to the hospital my nose was broken. I thought it was just bleeding. I didn't know it was broken."

Jesse further testified that on the night of the incident, he gave a signed, written statement to the police but May actually wrote the statement and he signed it without reading it. The trial court later admitted into evidence Jesse's statement, which read as follows: "I, Jesse, was over to my sister['s][;] [defendant] hit me in the nose because I won his money[.] He got mad & upset[.] He said he wasn't going for that bullshit."

May testified that on April 16, 1999, her brothers, Jesse and defendant, had a fight at her house because defendant wanted his money back. However, she claimed to be uncertain as to how the fight started or who did what to whom. She testified that during the incident, she was in and out of the room and did not actually see Jesse's nose being broken. She also stated that defendant was "tossed into a coffee table."

May also testified that on the night of the incident, she gave a written, signed statement to the police. Over defendant's objection, the trial court later admitted that statement into evidence. In that statement, May essentially says defendant got upset, cursed, and jumped Jesse.

An emergency room physician testified that on the evening of April 16, 1999, he treated Jesse for a lacerated and broken nose. During this treatment, Jesse told the physician that he was injured when he was punched in the nose during a fight.

Bloomington police officer Tim McCoy testified that around 11 p.m. on April 16, 1999, he responded to a domestic disturbance at defendant's house. When McCoy arrived, he spoke with Jesse, who told McCoy that defendant hit him in the nose after a dispute over some money. McCoy also spoke with defendant, who told McCoy that he hit Jesse because Jesse grabbed him around the neck. McCoy then arrested defendant and recovered a roll of blood-covered dollar bills. McCoy stated that Jesse then gave a written statement, using a Bloomington police department "voluntary statement" form. McCoy observed Jesse writing on the form, and McCoy signed the completed statement to acknowledge Jesse's signature. The prosecutor also showed McCoy photographs that he testified depicted the injuries to Jesse's nose and the blood on his shirt on the night of the incident.

McCoy also noticed that defendant had scraped knuckles, which defendant told him happened when defendant scraped his knuckles on the ground. McCoy observed no other injuries to defendant.

The trial court then allowed the State to recall Jesse to ask him about the 911 call he made on the night of the incident and to lay a foundation for the introduction of the tape recording of that call. In that tape recording, Jesse said that defendant hit him in the nose and broke his nose.

On this evidence, the jury found defendant guilty of aggravated battery and domestic battery. The trial court later set aside the aggravated battery conviction and sentenced defendant as earlier stated. This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Defendant first argues that the State failed to prove beyond a reasonable doubt that he did not act in self-defense. We disagree.

■ Self-defense is an affirmative defense, and once a defendant raises it, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the offense charged beyond a reasonable

doubt. (Defendant concedes that the State proved beyond a reasonable doubt that he committed domestic battery. See 720 ILCS 5/12—3.2(a)(2) (West 1998).) The elements of self-defense are that (1) unlawful force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm is imminent; and (4) the use of force was necessary. *People v. White*, 293 Ill. App. 3d 335, 338, 687 N.E.2d 1179, 1181 (1997). If the State negates any one of these elements, the defendant's claim of self-defense must fail. *People v. Shields*, 298 Ill. App. 3d 943, 947, 700 N.E.2d 168, 172 (1998).

■ The jury, as the trier of fact, determines witnesses' credibility, draws reasonable inferences from testimony, and resolves conflicts in evidence. A jury therefore need not accept a defendant's claim of self-defense. *People v. Boyd*, 307 Ill. App. 3d 991, 995, 719 N.E.2d 306, 309 (1999). "The standard of review for this issue is whether, taking all of the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that defendant did not act in self-defense." *People v. Lee*, 311 Ill. App. 3d 363, 367, 724 N.E.2d 557, 561 (2000).

In this case, the only evidence suggesting that defendant acted in self-defense came from Officer McCoy, who testified that on the night of the incident, defendant told McCoy that he hit Jesse because Jesse grabbed him around the neck. May testified that after defendant took the money, both he and Jesse started the fight. However, May acknowledged that on the night of the incident, she gave a written statement to the police, in which she stated that after defendant lost money in a card game, he became upset and "start[ed] jumping" Jesse. Jesse testified that after defendant grabbed the money, Jesse "bumped" his nose, although he could not recall how it happened. He also testified that he had not made any physical contact with defendant prior to his nose being broken. Jesse's testimony regarding his conversation with police on the night of the incident was internally inconsistent. At one point, he acknowledged that he told the police that defendant broke his nose because he wanted his money back but later stated that he could not remember whether that is what he told the police. Jesse's written statement to the police, which he admitted signing but denied writing, indicated that defendant hit Jesse in the nose after Jesse won defendant's money. In addition, the medical and photographic evidence reveals that Jesse suffered a lacerated and broken nose. In contrast, defendant was unscathed except for scraped knuckles. The apparent one-sided nature of the struggle supported the State's theory that defendant did not act in self-defense.

■ Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found beyond a

reasonable doubt that defendant did not act in self-defense, but instead instigated the entire incident or mutually entered into it. See *White*, 293 Ill. App. 3d at 338, 687 N.E.2d at 1182 (the defense of self-defense is not available when both parties fought willingly upon equal terms).

In so concluding, we note that the only evidence suggesting that defendant acted in self-defense came through the testimony of Officer McCoy when, during the prosecutor's direct examination, McCoy testified that defendant told McCoy that he hit Jesse because Jesse grabbed him around the neck. McCoy so testified when the prosecutor asked McCoy if defendant told McCoy anything about the incident.

The record reveals no possible benefit to the State from the prosecutor's eliciting defendant's self-defense claim through a police officer's testimony. Had the prosecutor not asked McCoy about defendant's version of the incident—thus establishing defendant's self-defense through McCoy's testimony—defendant would not have been permitted on cross-examination of the officer to elicit the same testimony. That is because, although statements made by a party opponent are admissible as an exception to the hearsay rule if otherwise relevant (*People v. Shaw*, 278 Ill. App. 3d 939, 951, 664 N.E.2d 97, 105 (1996)), the party himself cannot introduce his prior statements (*People v. Patterson*, 154 Ill. 2d 414, 452, 610 N.E.2d 16, 33 (1992) ("[s]elf-serving statements by an accused are inadmissible hearsay")). See also *People v. Woods*, 292 Ill. App. 3d 172, 178, 684 N.E.2d 1053, 1057-58 (1997) (defendant's exculpatory statements made to police regarding his alibi constitute inadmissible hearsay); *People v. Barnwell*, 285 Ill. App. 3d 981, 989, 675 N.E.2d 148, 154 (1996) (criminal defendant's exculpatory statements made to police constitute inadmissible hearsay, as would be the case with any out-of-court, self-serving declaration by a party not subject to any exception recognized by the hearsay rule); M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 802.1, at 753-56 (7th ed. 1999).

In *Woods*, 292 Ill. App. 3d at 178, 684 N.E.2d at 1058, this court addressed a situation in which the prosecutor pointlessly elicited the defendant's alibi from a police officer and wrote as follows: "As a matter of simple trial tactics, trial lawyers—including prosecutors—should ask themselves when conducting direct examination of the witnesses they call, 'how does eliciting the following information help my case and damage the other side?' " Judged according to this standard, it simply makes no sense for a prosecutor to elicit a defendant's self-defense claim through the State's own witnesses.

### B. Prior Inconsistent Statements As Substantive Evidence

Defendant next argues that the trial court erred by admitting into

evidence the tape recording of Jesse's 911 call and May's written statement. The State responds that the trial court did not err because both the tape recording and the written statement were admissible under section 115—10.1 of the Code (725 ILCS 5/115—10.1 (West 1998)). The State contends that, under that statute, they were prior inconsistent statements admissible as substantive evidence. Defendant retorts that the State's argument is faulty because (1) the prosecutor failed to lay the proper foundation regarding Jesse's 911 call, and (2) May's statement was not inconsistent with her trial testimony. We agree with defendant regarding Jesse's 911 call but disagree regarding May's written statement.

■ Section 115—10.1 of the Code reads, in pertinent part, as follows:

"Admissibility of Prior Inconsistent Statements. In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—

(1) was made under oath at a trial, hearing, or other proceeding, or

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

(A) the statement is proved to have been written or signed by the witness, or

(B) the witness acknowledged under oath the making of the statement either in his testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought, or at a trial, hearing, or other proceeding, or

(C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording." 725 ILCS 5/115—10.1 (West 1998).

### 1. *Jesse's 911 Call*

When Jesse first testified at defendant's jury trial, his testimony was inconsistent with a written statement he gave to the police on the day in question, and the trial court admitted that written statement into evidence. The court later granted the State permission to recall Jesse to ask him about his 911 call and to lay a foundation for the introduction of the tape recording of that call. When Jesse retook the stand, the prosecutor handed him a tape, People's exhibit No. 7, which

Jesse identified as the tape he had listened to earlier that day. The following colloquy then occurred:

"Q. What is that on that tape?

A. The call to 911.

Q. It is a call that you made to 911?

A. Yeah.

Q. And it is your voice on that tape?

A. Yes.

Q. You recognize your voice on that tape?

A. Yes, it is.

Q. And it is a call that you made on April 16, 1999?

A. Right.

[PROSECUTOR]: I don't have any further questions of this witness."

When the State then offered exhibit No. 7 into evidence, defendant objected, arguing that the State had failed to present a sufficient foundation. Defense counsel then made the following argument:

"I don't remember the magic question here[,] '[D]id you tell the dispatcher XY and Z.' So I don't see what he's impeaching yet.

Even when [Jesse] was on the stand[,] he wasn't asked, 'did you tell *** the 911 dispatcher you got hit in the nose.' "

The trial court then listened to the tape itself outside the jury's presence and made the following ruling: "[T]he court clearly heard where [Jesse] tells the dispatcher [defendant] hit him in the nose and broke his nose. That is inconsistent with his testimony today. State's [e]xhibit [No.] 7 is admitted over objection." Defense counsel's objection was soundly based, and for the reasons that follow, the trial court erred by admitting the tape.

■ In *People v. Speed*, 315 Ill. App. 3d 511, 516, 731 N.E.2d 1276, 1280 (2000), this court pointed out that, to be admissible under section 115—10.1 of the Code, a witness' prior statement must be inconsistent with the witness' testimony at trial. However, the inconsistency required by section 115—10.1(a) must be demonstrated when the witness testifies before the trier of fact, not, as here, when the trial court assesses the statement in question after the witness has completed his testimony and left the witness stand. Laying a sufficient foundation was discussed in *People v. Edwards*, 309 Ill. App. 3d 447, 457-58, 722 N.E.2d 258, 265-66 (1999) (Steigmann, J., specially concurring), as follows:

"Laying the foundation for the admission of a prior inconsistent statement as substantive evidence under section 115—10.1 of the Code is essentially the same as laying the foundation to impeach a witness with his prior inconsistent statement. In *People v. Hall-beck*, 227 Ill. App. 3d 59, 62-63, 590 N.E.2d 971, 972-73 (1992), the

Second District addressed the foundational requirements of section 115—10.1 and wrote the following:

'A proper foundation must be laid before prior inconsistent statements are allowed into evidence. Part of the necessary foundation is asking the witness whether he made the inconsistent statement. [Citations.] Generally, the questioner must direct the attention of the witness to the time, place, and circumstances of the statement and its substance. [Citation.] The witness must have an opportunity to explain the inconsistency before the introduction of extrinsic evidence of the statement; this requirement prevents unfair surprise and gives the witness an opportunity to explain any inconsistency.' "

Thus, a key aspect to establishing the foundation for the admissibility of a prior inconsistent statement is the need to confront the witness *while on the witness stand* with that statement. Thus, in the present case, the prosecutor, after having first called Jesse's attention to his 911 call, should have asked the following question: "Did you say · in that 911 call, 'Johnny Grayson busted my nose'?" In response, Jesse might have acknowledged that he did, in which case the State would not be required to later present any extrinsic evidence to complete his impeachment (see section 115—10.1(c)(2)(B) of the Code (725 ILCS 5/115—10.1(c)(2)(B) (West 1998))). Or, Jesse might have denied making that statement, in which case the State would be required to complete the impeachment (and, concomitantly, the foundation for the statement's admissibility as a prior inconsistent statement under section 115—10.1 of the Code) by presenting extrinsic evidence that Jesse did, in fact, make that statement. In this case, that extrinsic evidence was the tape recording.

That the prior inconsistent statement at issue here was contained in a tape recording, instead of the more typical situation in which it is contained in a written statement, makes no difference. The rules governing impeachment of a witness with his prior inconsistent statement remain the same.

■ The procedure described above is the traditional foundation to impeach any witness with his prior inconsistent statement, whether that prior statement is to be offered for substantive purposes or merely for impeachment. As *Hallbeck* correctly pointed out, this process should be followed for prior inconsistent statements sought to be admitted under section 115—10.1 of the Code. *Hallbeck*, 227 Ill. App. 3d at 63, 590 N.E.2d at 973. Because the State failed to confront Jesse while he was on the witness stand with the prior inconsistent statement he made during the 911 call, the State failed to lay the necessary foundation for the admission of that tape pursuant to section 115—

10.1 of the Code. Specifically, the State did not establish the inconsistency of the statement, within the meaning of section 115—10.1(a) of the Code, because Jesse was never confronted with the statement while testifying. 725 ILCS 5/115—10.1(a) (West 1998).

One of the important reasons for the requirement that a witness be confronted with his allegedly prior inconsistent statement while still on the witness stand is to provide the opposing party with the opportunity to ask the witness to explain or clarify the inconsistent statement. When a witness is not confronted with his prior inconsistent statement, as occurred here when Jesse was not confronted with the statement he made in the recording of his 911 call, the opposing party is deprived of the opportunity to ask the witness to explain the inconsistency, if he can.

Almost 60 years ago, the Supreme Court of Illinois in *People v. Perri*, 381 Ill. 244, 249-50, 44 N.E.2d 857, 859 (1942), addressed the procedure to be followed to impeach a witness by his prior inconsistent statement and wrote as follows:

> "Before a witness can be impeached by showing he has made oral statements out of court inconsistent with his testimony, he must be asked as to the time, place[,] and persons involved in the alleged conversation in order that he may be afforded an opportunity to explain it. If the witness denies having made contradictory statements at the time, place[,] and to the person alleged, then the contradictory evidence becomes proper."

The State responds to *Perri* by pointing out that it was rendered long before section 115—10.1 of the Code was enacted. True enough, but totally beside the point, given that, as we explained earlier, that section fully incorporates the law regarding the foundation necessary to impeach a witness with his prior inconsistent statement.

We note that the procedure to be employed when the "contradictory evidence becomes proper," as the supreme court in *Perri* termed it, was recently discussed by this court in *People v. Bunning*, 298 Ill. App. 3d 725, 732, 700 N.E.2d 716, 722 (1998), as follows:

> "It is generally improper to ask a leading question of your own witness. M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 611.9, at 451 (6th ed. 1994). *** Questions that may be answered 'yes' or 'no' are generally considered leading. M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 611.9, at 451 (6th ed. 1994). When formulating questions to witnesses to impeach the testimony of another witness, the question should be phrased in such a way as to avoid the possibility of bringing incompetent matters into the trial. A departure from the rule against leading questions is required to avoid any improper reference in the answer. M. Graham, R. Steigmann, W. Brandt, & E. Imwinkelried, Illinois

Evidentiary Foundations 139 (2d ed. 1997); M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 613.3, at 516 (6th ed. 1994).

Impeachment of a witness may occur procedurally in a party's case in chief or in the form of rebuttal. Here the impeachment was in the context of a rebuttal witness for the purpose of proving another witness made a prior statement contrary to the statement testified to. It was proper to ask [the impeaching witness] whether the statement of [the earlier witness] was made to [the impeaching witness] and the answer to be made, yes or no. Where the witness is presented in this context, it is proper to refer to the specific statement in asking for a yes or no answer.".

Before concluding this discussion, we wish to state our disagreement with the First District Appellate Court's decision in *People v. McDonald*, 276 Ill. App. 3d 466, 658 N.E.2d 1251 (1995). In that case, the First District held that a sufficient foundation for the admissibility of a prior inconsistent statement under section 115—10.1 of the Code occurred when the witness testified, without more, that he had given earlier statements to investigating police officers. *McDonald*, 276 Ill. App. 3d at 475-77, 658 N.E.2d at 1256-57. However, the State never confronted the witness with the *content* of those statements. In dissent, Justice Warren Wolfson wrote that "[t]he operative word in section 115—10.1(c)(2)(B) is 'acknowledge.' The witness must 'acknowledge' the *words* attributed to him by the police officer, not that he made some unspecified statement. Otherwise, the witness' statement would be whatever the police officer says it is." (Emphasis added.) *McDonald*, 276 Ill. App. 3d at 480, 658 N.E.2d at 1259 (Wolfson, J., dissenting).

We agree with Justice Wolfson and note that, in the present case, as in *McDonald*, Jesse was not specifically confronted with the *words* of his statement that constituted the alleged inconsistency.

Although we conclude that the trial court erred by admitting the tape recording of Jesse's 911 call, we do not conclude that this error requires reversal. First, the tape recording was largely cumulative of Jesse's other properly admitted prior inconsistent statements. Second, the only argument against the overwhelming nature of the State's evidence is defendant's claim that the State failed to prove beyond a reasonable doubt that he did not act in self-defense. However, we earlier concluded that this argument was groundless. Accordingly, the evidentiary error that the trial court committed by admitting Jesse's 911 call into evidence does not require reversal. *People v. Thomas*, 178 Ill. 2d 215, 235-36, 687 N.E.2d 892, 901 (1997); *People v. Saunders*, 220 Ill. App. 3d 647, 659, 580 N.E.2d 1246, 1255 (1991).

## 2. *May's Written Statement*

Next, defendant argues that the trial court erred by admitting May's written statement under section 115—10.1(a) of the Code because it was not inconsistent with her trial testimony. 725 ILCS 5/115—10.1(a) (West 1998). Specifically, he contends that May's written statement that he "start[ed] jumping" Jesse had no tendency to contradict May's trial testimony that he "started a fight." Defendant thus asserts that, because "[t]hese two statements were, in fact, completely consistent with each other[,] [a]dmission of the written statement *** was an abuse of discretion." We disagree.

In *People v. Flores*, 128 Ill. 2d 66, 87-88, 538 N.E.2d 481, 489 (1989), the supreme court held that determining whether a prior statement is inconsistent within the meaning of section 115—10.1 of the Code, so as to be admissible as substantive evidence, rests within the trial court's sound discretion. Thus, the issue now before us is whether the trial court abused its discretion by concluding that May's written statement to the police was inconsistent with her testimony at trial, so as to be admissible as substantive evidence under section 115—10.1 of the Code.

The entirety of May's written statement at issue is the following: "[Defendant] lost some money in a card game[,] got mad & upset[,] cursing[;] say [*sic*] he isn't going for this bullshit and start[ed] jumping Jesse Fullilove."

■ When called as a witness at trial, May admitted that she did not want to testify against her brother, and her testimony at trial was equivocal. She claimed to be in the kitchen during almost the entire fight and expressed uncertainty as to who started it. She also claimed that she did not hear defendant say anything other than to ask for his money back.

> "[A] witness' prior testimony does not need to directly contradict testimony given at trial to be considered 'inconsistent,' as section 115—10.1 of the Code uses that term. In *People v. Flores*, 128 Ill. 2d 66, 87, 538 N.E.2d 481, 488 (1989), quoting *United States v. Williams*, 737 F.2d 594, 608 (7th Cir. 1984), the supreme court held that the term 'inconsistent' in section 115—10.1 is not limited to direct contradictions but also includes ' "evasive answers, *** silence, or changes in position." ' " *People v. Edwards*, 309 Ill. App. 3d 447, 458, 722 N.E.2d 258, 266 (1999) (Steigmann, J., specially concurring).

See also *People v. Salazar*, 126 Ill. 2d 424, 458, 535 N.E.2d 766, 780 (1988) ("[i]n some circumstances, *** a mere tendency to be inconsistent will be enough to admit the statements into evidence and in other circumstances more than a mere tendency would be needed to admit

the statements"); *People v. Fields*, 285 Ill. App. 3d 1020, 1028, 675 N.E.2d 180, 185 (1996) (following *Salazar*'s analysis and holding that the statements at issue were sufficiently inconsistent to be admissible under section 115—10.1 of the Code); *People v. Lee*, 243 Ill. App. 3d 745, 749, 612 N.E.2d 922, 924 (1993) (inconsistency under section 115—10.1 of the Code does not require a direct contradiction, but only a tendency to contradict the witness' present testimony).

■ Judged in accordance with the foregoing authority, we conclude that the trial court in this case did not abuse its discretion by concluding that May's written statement was sufficiently inconsistent with her trial testimony so as to be admissible as substantive evidence under section 115—10.1 of the Code.

## C. Payment Order

■ Last, defendant argues that the trial court erred by ordering him to pay $200 for his court-appointed attorney without first holding a hearing to determine his ability to pay pursuant to section 113—3.1(a) of the Code (725 ILCS 5/113—3.1(a) (West 1998)) and *People v. Love*, 177 Ill. 2d 550, 687 N.E.2d 32 (1997).

The State concedes that the payment order should be vacated because the trial court failed to conduct a section 113—3.1(a) hearing and requests that this court remand this cause for such a hearing. We accept the State's concession and grant its request for a remand. Accordingly, we vacate the court's $200 payment order and remand the cause for a hearing pursuant to section 113—3.1 of the Code. In doing so, we are following this court's action in *People v. Williamson*, 319 Ill. App. 3d 891, 900 (2001), which we acknowledge appears to be inconsistent with this court's previous decision in *Speed*, 315 Ill. App. 3d at 518, 731 N.E.2d at 1281, regarding the appropriateness of a remand for a hearing pursuant to section 113—3.1 of the Code. Upon further reflection, we decline to follow that portion of *Speed*.

## III. CONCLUSION

For the reasons stated, we affirm in part, vacate in part, and remand with directions.

*Affirmed in part and vacated in part; cause remanded with directions.*

KNECHT, J., concurs.

JUSTICE COOK, dissenting.
I respectfully dissent and would reverse.
If there are three witnesses in a criminal case, and they all testify

that defendant did not commit the offense, can the jury, taking into account the witnesses' reluctance to testify, disbelieve them and find the defendant guilty?

First of all, I disagree that this was a mutual combat situation where the defense of self-defense was not available. "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force." Illinois Pattern Jury Instructions, Criminal, No. 24—25.06 (4th ed. 2000) (hereinafter IPI Criminal 4th). "A person who has not initially provoked the use of force against himself has no duty to attempt to escape the danger before using force against the aggressor." IPI Criminal 4th No. 24—25.09X. An initial aggressor, a person who initially provokes the use of force against himself, is justified in the use of force only if he (1) reasonably believes he is in imminent danger of death or great bodily harm and has exhausted all other means to escape or (2) indicates clearly his withdrawal but the other person continues the use of force. IPI Criminal 4th No. 24—25.09.

There is no right of self-defense in a mutual combat situation. Where two individuals in a bar agree to step outside and fight, either or both may be charged with battery. The fact that one of them strikes the first blow does not give the other the right to respond. The agreement to fight constitutes a provocation to the use of force, making each party an initial aggressor. See IPI Criminal 4th No. 24—25.09. Both fighters are guilty of battery unless one of them qualifies to use force as an initial aggressor. See *State v. Allred*, 129 N.C. App. 232, 235, 498 S.E.2d 204, 206 (1998) (if a person voluntarily enters into a fight he cannot invoke the doctrine of self-defense unless he withdraws from the fight and notifies his adversary that he has done so). There is no evidence the individuals here agreed to enter into a fight. The evidence is that there was a dispute over money which led to blows being struck.

Jesse testified that he and defendant were playing cards, that Jesse had been winning, that defendant grabbed his money, that Jesse wanted his money back, that an altercation ensued, and his nose was broken by defendant, perhaps when Jesse fell against the coffee table rail. Jesse testified he had not made any physical contact with defendant prior to his nose being broken. (What physical contact did he make? When did he make it? How did he go about getting his money back? Why would defendant, who had the money, strike Jesse?) Jesse told the investigating officer that defendant hit him in the nose after a dispute over some money. At trial, Jesse testified that he did not know how his nose was broken, that May had written his statement for him,

and that he signed the statement because he was mad at defendant and wanted his money back.

May testified that her brothers, Jesse and defendant, had a fight because defendant grabbed the money, that she thought Jesse made the first contact in the fight, that defendant was tossed into a coffee table, and that she did not see Jesse's nose being broken. May testified that both Jesse and defendant started the fight. May testified she gave a written statement to police in which she stated that, after defendant lost money in a card game, he became upset and "start[ed] jumping" Jesse.

The investigating officer, McCoy, testified that defendant told him that he hit Jesse because Jesse grabbed him around the neck.

The majority complains that "the only evidence suggesting that defendant acted in self-defense came from Officer McCoy." 321 Ill. App. 3d at 402. The more appropriate question is, what evidence was there that defendant did *not* act in self-defense? The fact that a fight occurred is not evidence there was no self-defense. Once a defendant raises self-defense as an affirmative defense, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. *People v. Jeffries*, 164 Ill. 2d 104, 127-28, 646 N.E.2d 587, 597-98 (1995). Where there is no evidence one way or the other, the State loses. While credibility of a witness is within the province of the trier of fact and the finding of the jury on such matters is entitled to great weight, the jury's determination is not conclusive. Rather, we will reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *People v. Smith*, 185 Ill. 2d 532, 541-42, 708 N.E.2d 365, 369-70 (1999); *People v. Minniweather*, 301 Ill. App. 3d 574, 577-78, 703 N.E.2d 912, 913-14 (1998); *People v. De Oca*, 238 Ill. App. 3d 362, 367-68, 606 N.E.2d 332, 336 (1992) (question whether defendant was the initial aggressor).

What was the evidence that defendant was the aggressor? Defendant took the money Jesse had won from defendant. Jesse tried to get it back. Even if Jesse's testimony is believed, that he had not made any physical contact before his nose was broken, that testimony does not establish that Jesse was not the initial aggressor. Even the mere utterance of words may be enough to qualify one as an initial aggressor. *People v. Dunlap*, 315 Ill. App. 3d 1017, 1025-26, 734 N.E.2d 973, 981 (2000). The fact that defendant took the money, and the fight would not have happened if he had not done so, does not make defendant the initial aggressor. Not every utterance of words or other conduct that results in a fight makes one the initial aggressor. Where a victim tells defendant to stop and that she is going to call the police,

those actions do not make the victim the initial aggressor. *Dunlap*, 315 Ill. App. 3d at 1025-26, 734 N.E.2d at 981. Defendant's taking his money back, accomplished by grabbing it, did not give Jesse the right to use force. The majority's complaint that Jesse's testimony was "internally inconsistent" does not aid the State. 321 Ill. App. 3d at 402. Jesse was the State's witness.

The majority's argument, that "[t]he apparent one-sided nature of the struggle supported the State's theory that defendant did not act in self-defense" (321 Ill. App. 3d at 402), is simply grasping for straws. The victim of an attack may land a blow that ends the attack. The most that can be said about this case is that we do not know whether defendant or Jesse was the aggressor. We do not know whether defendant reasonably believed his conduct was necessary to defend himself against the imminent use of unlawful force. The evidence was not sufficient to disprove self-defense beyond a reasonable doubt.

Nor does May's prior statement that defendant became upset and "start[ed] jumping" Jesse provide any assistance to the State. The evidence indicated that defendant was upset about Jesse winning his money and that defendant grabbed the money. The words, "start[ed] jumping" Jesse, do not add anything to that, particularly in light of May's testimony at trial. Again, the State has impeached its own witness here. The fact that May's prior inconsistent statement is admissible substantively under section 115—10.1 does not mean that that statement is accurate or must be accepted over the testimony that May presented at trial. The State's evidence is so unreasonable, improbable, or unsatisfactory in this case that there is a reasonable doubt of defendant's guilt.

Section 115—10.1 is useful to prevent State's witnesses from disavowal of their statements made during the pretrial investigation of the case, which statements may have been very thorough and specific. Section 115—10.1 should not be used in a case where there is little or no evidence, in an attempt to bolster weak evidence by repetition, even where the witness is an unwilling one. Where not even the victim is willing to testify that a crime has occurred, it is difficult to see how the State has proved its case beyond a reasonable doubt.