NOTICE
Decision filed 11/12/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230067-U

NO. 5-23-0067

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 22-CF-367 |
| | ) | |
| CHRISTOPHER A. RUSSELL, | ) | Honorable |
| | ) | James R. Coryell, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Vaughan and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction where the State met the statutory requirements for admission of the 9-1-1 call recording as a prior inconsistent statement, and defendant failed to prove prejudice under either plain error or ineffective assistance of counsel regarding the admission of the officer's testimony and body-worn camera video footage.

¶ 2    Defendant, Christopher A. Russell, appeals his conviction for domestic battery by making insulting and provoking contact in violation of section 12-3.2(a)(2) of the Criminal Code of 2012. 720 ILCS 5/12-3.2(a)(2) (West 2020). Defendant contends the trial court erred when it allowed evidence of the victim's prior inconsistent statements to be introduced at trial. Defendant argues the evidence lacked foundation and should not have been allowed. We affirm.

1

¶ 3                                    I. Background

¶ 4     On April 6, 2022, the State charged defendant by information with home invasion while armed with a firearm (count I) (*id.* § 19-6(a)(3)), home invasion causing injury (count II) (*id.* § 19-6(a)(2)), domestic battery causing bodily harm with a prior domestic battery conviction (count III) (*id.* § 12-3.2(a)(1)), and domestic battery making insulting or provoking physical contact with a prior domestic battery conviction (count IV) (*id.* § 12-3.2(a)(2)). The charged conduct allegedly occurred on December 26, 2021.

¶ 5     The jury trial commenced on December 13, 2022. The State called the victim, Candace Hettinger, to testify. When asked to state her name, the victim responded, "I would like to plead the fifth." After being directed to answer the question by the trial court, she did so. The victim testified that she currently resides in the Illinois Department of Corrections serving a sentence for driving under the influence. Prior to her incarceration, she resided at 2813 East Cardinal Drive in Decatur, Illinois. The victim confirmed she had a four-year dating relationship with defendant. The following colloquy occurred between the State and the victim concerning the relationship, and the night of December 26, 2021:

> "Q. MR. FRIEDEL [(THE STATE)]: Okay. And at the time of the incident were you dating or were you broken up?
> A. CANDACE HETTINGER [(THE VICTIM)]: I don't recall what incident you're even talking about.
> Q. Okay. I want to direct your attention to the 26th day of December 2021—
> A. I believe I recanted on that.
> Q. I understand that, but I want to direct your attention to December 26th, 2021. Do you remember that day?
> A. No. I don't. That's the reason for recanting. I have no memory.
> Q. Zero memory whatsoever?
> A. Zero.
> Q. None at all?
> A. None. I've had accidents while being incarcerated. My memory is about gone. I didn't even remember [a] video visit with my kid yesterday, let alone anything even a week ago.
> Q. Okay. Do you remember calling 911 on that evening?

A. I have no recollection of any of this."

¶ 6 The victim further testified that her and her "boyfriend fiancé husband Christopher Russell" lived together at the Decatur residence in December 2021. She denied that she remembered talking to the police. She did remember speaking to the victim witness coordinator in the state's attorney's office, testifying, "You two badgered me for two hours *** telling me I have to testify, *** and I have no right to plead and my recant [*sic*] didn't matter." The State ended its direct examination "subject to recalling."

¶ 7 On cross-examination, the victim reiterated that she had no memory of calling the police that night. She insisted that she recanted and had allegedly provided a notarized letter to the state's attorney's office recanting.

¶ 8 On redirect examination, the victim stated she recalled neither talking to the police about the caliber of gun defendant allegedly possessed nor showing police defendant's clothing. Ultimately, the State inquired, "[I]f I were to ask you any question about what happened on the night of the 26th your answer to me is going to be that you do not remember. Is that correct?" The victim answered, "Correct."

¶ 9 The State later recalled the victim for further testimony and attempted to introduce several pieces of evidence. First, the State sought to play for the victim and the jury the 9-1-1 call from the night of December 26, 2021. Defense counsel objected for lack of foundation. The trial court overruled the objection "subject to [the State] connecting it up." The State played the 9-1-1 call recording and asked the victim, "[C]an you tell us whose voice that was?" The victim stated she was not quite sure. The State further inquired:

> "Q. You're telling me that you can't recognize that voice as your own?
> A. No. I do not.
> Q. Is there anybody else that would give their address of Cardinal Drive by the name of Candace Hettinger?

3

A. I don't know what other people do.

Q. Is there anyone else that resides at that—at that address whose name is Candace Hettinger?

A. Well, there's only one Candace Hettinger, but—"

¶ 10 Next, without objection, the State played home security video footage labeled "kitchen door 164057717004." The video showed defendant approaching the home's kitchen door on the night of December 26, 2021. The victim then testified that she recognized "my house and my boyfriend. The video, no."

¶ 11 The State then played, without objection, two voicemails allegedly containing the voice of defendant threatening the victim. The victim stated that she did not recognize the voice in the recordings.

¶ 12 The State also sought to play an edited clip of a responding police officer's body-worn camera. Defense counsel objected for lack of foundation. The trial court overruled the objection "subject to [the State] connecting." The video was played before the victim and jury. The victim testified that she could neither recognize herself nor recognize the voices of her daughter and granddaughter. She further stated, "[T]hat's my home and my father's home. I don't even remember it."

¶ 13 On cross-examination, the victim testified that she did not recall having any injuries around December 26, 2021. When asked if the body-worn camera footage refreshed her memory in any way, she answered in the negative. The victim was dismissed for the remainder of defendant's trial.

¶ 14 The State next called Officer Kristina Kemnitz of the Decatur Police Department. Officer Kemnitz testified that she responded to Cardinal Drive on December 26, 2021, due to "reports of a home invasion and domestic situation." Upon arrival, Officer Kemnitz made contact with the victim. The victim was upset and began relaying what happened. Officer Kemnitz testified that

4

she wore a body camera per department policy, and that officers "dock [their] body cams at headquarters and it gets saved into a file" following a shift.

¶ 15 The State moved to admit the edited, unredacted body-worn camera footage—as well as the edited portion played during the victim's testimony—into evidence. Defense counsel objected for lack of foundation. The State played a portion of the footage for Officer Kemnitz, and the following colloquy occurred:

> "Q. MR. FRIEDEL [(THE STATE)]: Officer, is that your body camera?
> A. OFFICER KEMNITZ: Yes.
> Q. And what date was that taken?
> ***
> A. December 26—
> ***
> Q. 2021?
> A. Yes.
> Q. The person that is standing right there *** in the white shirt do you recognize who that is?
> A. Yes.
> Q. Who is that?
> A. That's Candace.
> Q. *** Candace?
> A. Hettinger.
> Q. Okay. And later in the evening on the video there are also a couple of other people maybe a daughter and—
> A. *** Her daughter and her daughter's daughter was there."

¶ 16 The State again offered the body-worn camera footage into evidence. Defense counsel did not object, and the trial court admitted the footage into evidence. The State attempted to offer into evidence additional body-worn camera footage from a follow-up visit that Officer Kemnitz conducted with the victim. Defense counsel objected to hearsay contained within the recording. The State argued that it was admissible "under 725 ILCS 5/115-10.1. *** [The victim] has indicated that this—that she did not remember what occurred." The court sustained the objection, noting that the victim was not "confronted" with the follow-up footage.

5

¶ 17   The State moved on to several photographs—People's Exhibits 5 through 15. First, the State asked Officer Kemnitz to identify People's Exhibit 5. Officer Kemnitz identified the photograph as a "still frame" from the security camera footage. Officer Kemnitz identified the person in the photograph as defendant "approaching the door right before kicking it in." Officer Kemnitz then identified People's Exhibit 6 as a photograph of the victim's "left collarbone where she claimed to have been struck with a closed fist by [defendant]." Officer Kemnitz identified People's Exhibits 7 through 15 as photographs documenting the door and door frame to the kitchen. Officer Kemnitz explained that the photographs showed dents on the door, damage to the door frame, and splinters of wood on the floor of the kitchen all consistent with the door "being forced open." She acknowledged the photographs fairly and accurately depicted what she observed on December 26, 2021. Defense counsel only objected to the "still frame" photograph taken from the security footage arguing that "foundation has not been established" for the video. The trial court overruled the objection and accepted all photographs into evidence.

¶ 18   Officer Kemnitz testified that the victim provided her with the "kitchen door 164057717004" security camera footage on the evening of December 26, 2021. At that time, the victim indicated that the footage, which was date and time stamped, came from her home security camera. Defense counsel objected for a lack of foundation. The trial court overruled the objection, indicating that the victim "identified the video when she saw it." The court admitted the security camera footage into evidence.

¶ 19   Lastly, Officer Kemnitz testified about two voicemails that the victim provided her. The victim indicated to Officer Kemnitz that the voicemails came from defendant. The State played the voicemails and then moved to enter them into evidence without objection. The trial court entered the voicemails into evidence. On cross-examination, Officer Kemnitz acknowledged that

she recorded the voicemails played from the victim's phone with her own camera, instead of "extracting" the voicemails or "pull[ing] the data."

¶ 20     The State next called Officer Cody Rose of the Decatur Police Department. Officer Rose testified that he interviewed defendant on April 4, 2022. Defendant stated that he and the victim dated for three years at the time the incident in question occurred. According to Officer Rose, defendant said the victim "owed him five hundred dollars," and the victim invited him to come over to get the money. He knocked on the door, but the victim did not let him in. When defendant went to get his house key, he noticed it was missing from the key ring and "figured [the victim] had removed the key." After knocking on a door and window, defendant said the victim let him in through a side door. Once inside, the victim "got upset with him for an unknown reason" and threatened to call the police. Defendant stated that he left the residence at that time. Defendant denied kicking the door in when asked by Officer Rose. Defendant said he "didn't remember sending one [voicemail] and that he probably did send the other." On cross-examination, Officer Rose stated that defendant denied bringing a firearm to the residence.

¶ 21     The parties called no further witnesses, but the State sought to introduce the 9-1-1 call into evidence and "bring in the foundation." Defense counsel once again objected for lack of foundation, arguing that "[the victim] did not remember making that call" and "no other evidence *** connect[s] her voice with that particular call." The trial court allowed the 9-1-1 call into evidence because "the statement which has been received as substantive evidence, she acknowledged making the 911 call." The court then addressed Officer Kemnitz's body-worn camera footage—the edited and unedited versions. The court admitted the footage into evidence without objection.

7

¶ 22    The jury returned a verdict of not guilty on counts I-III, and guilty on count IV, domestic battery through insulting or provoking physical contact with a prior domestic battery. On December 28, 2022, defendant filed a motion for judgment notwithstanding the verdict.

¶ 23    On January 26, 2023, the trial court held a hearing on defendant's motion for judgment notwithstanding the verdict. Among other arguments, defense counsel further alleged in the written motion that the court erred by admitting the 9-1-1 call, kitchen door security camera footage, and voicemail messages because the evidence lacked the requisite foundation. The court denied defense counsel's motion for judgment notwithstanding the verdict.

¶ 24    The trial court sentenced defendant to two years' imprisonment followed by four years mandatory supervised release. Defendant timely appealed.

¶ 25                                    II. Analysis

¶ 26    On appeal, defendant contends that the trial court erred when it allowed evidence of the victim's prior inconsistent statements to be introduced as substantive evidence against defendant. Specifically, defendant argues that the 9-1-1 call, Officer Kemnitz's body-worn camera footage, and Officer's Kemnitz's testimony all lacked foundation. Defendant asserts that the State failed to direct the victim to the time, place, circumstances, and substance of her statements to lay foundation for proper admission. We address defendant's contentions in turn.

¶ 27    As an initial matter, the parties disagree about the appropriate standard of review. Generally, the admissibility of evidence is a matter for the trial court's discretion and is only reversed when the court abuses that discretion. *People v. Flores*, 128 Ill. 2d 66, 87-88 (1989); *People v. Guerrero*, 2021 IL App (2d) 190364, ¶ 62. However, defendant argues that this court should exercise *de novo* review. He "does not deny that professed memory loss can be inconsistent with previous testimony. Rather, he maintains that the State failed to lay the adequate foundation

\*\*\*." Defendant believes the issue before this court is "whether the criteria for substantive admission of prior inconsistent statements were met" and thus requires statutory interpretation and *de novo* review. We conclude that we need not decide this question, as defendant's contentions fail under either standard of review.

¶ 28    Section 115-10.1 of the Code of Criminal Procedure of 1963 (Code) governs the substantiative admissibility of prior inconsistent statements:

> "§ 115-10.1 Admissibility of Prior Inconsistent Statements. In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if
>
> (a) the statement is inconsistent with his testimony at the hearing or trial, and
>
> (b) the witness is subject to cross-examination concerning the statement, and
>
> (c) the statement—
>
> \*\*\*
>
> (2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and
>
> \* \* \*
>
> (C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of recording." 725 ILCS 5/115-10.1 (West 2020).

¶ 29    Defendant argues that the State failed to lay adequate foundation for the 9-1-1 call because the State failed to direct the victim's attention to the time, place, circumstances, and substance of her statements in the 9-1-1 call recording. Defendant believes the State's error deprived the victim of the opportunity to explain the inconsistency before the State introduced the extrinsic evidence. Defendant contends the State "needed to ask [the victim], on the stand, whether she made the

9

incriminating statement, '[Defendant] just kicked my door in and punched me,' to the 911 operator on December 26, 2021."

¶ 30    A witness's prior statement need not directly contradict the witness's trial testimony to qualify as "inconsistent" within the meaning of section 115-10.1 of the Code. *Flores*, 128 Ill. 2d at 87. The term also includes evasive answers, silence, or changes in position. *People v. Martin*, 408 Ill. App. 3d 891, 895 (2011). " 'One of the policies underlying section 115-10.1 of the Code is to protect parties from 'turncoat' witnesses who back away from a former statement made under circumstances indicating that it was likely to be true.' " *Id.* (quoting *People v. Tracewski*, 399 Ill. App. 3d 1160, 1165 (2010)). A witness's professed memory loss is sufficient to establish inconsistency for purposes of section 115-10.1 of the Code. *Flores*, 128 Ill. 2d at 88.

¶ 31    Here, the victim professed near-complete memory loss over almost every aspect of the events that occurred on December 26, 2021. The State inquired, "[I]f I were to ask you any question about what happened on the night of the 26th your answer to me is going to be that you do not remember. Is that correct?" The victim answered, "Correct." Regarding the 9-1-1 call, the victim testified that she did not recall making the call that night. The State played the call and asked the victim if that was her voice. She responded that she was unsure or did not know if the voice belonged to her, despite acknowledging that "there's only one Candace Hettinger" at the address given to the 9-1-1 operator.

¶ 32    Defendant relies on *People v. Grayson*, 321 Ill. App. 3d 397 (2001), to support his contention that the State needed to confront the victim with specific content of the call or the time, place, and circumstances surrounding it. In *Grayson*, one of the State's witnesses testified that he listened to a tape recording of a 9-1-1 call earlier that day. *Id.* at 404-05. The State then asked the witness if it was his voice on the recording. *Id.* at 405. The witness answered in the affirmative.

10

*Id*. The tape recording was admitted into evidence. *Id*. The appellate court held it was error to enter the tape into evidence because the State failed to establish any inconsistency between the recording and the witness's testimony and did not confront the witness with his statements on the recording. *Id*. at 405-07.

¶ 33    We find *Grayson* distinguishable. In *Grayson*, the State failed to establish any inconsistency between the witness's testimony and his statements on the 9-1-1 call. The witness identified that the tape contained his 9-1-1 call, recognized his voice on the recording and confirmed that it was indeed him, and agreed that it was a call he made on the date in question. *Id*. at 405. Here, in contrast, the State established an inconsistency when it confronted the victim with the 9-1-1 call recording and the victim claimed to have no memory of making the call and stated that she was unsure or did not know if the voice on the recording belonged to her. Further, the victim plainly told the State that her answer to any question concerning December 26, 2021, would be that she did not remember. Professed memory loss is sufficient to establish inconsistency for purposes of section 115-10.1 of the Code. *Flores*, 128 Ill. 2d at 88.

¶ 34    Accordingly, we conclude that the statutory prerequisites for the admission of a prior inconsistent statement (the 9-1-1 call recording) were met where the victim's professed memory loss was sufficient to establish inconsistency. The victim consistently professed memory loss, was subject to cross-examination, and her statements in the 9-1-1 call recording describe the circumstances at issue, and there is no dispute regarding the accuracy of the recording. 725 ILCS 5/115-10.1 (West 2020); *People v. Bush*, 2023 IL 128747, ¶ 59.

¶ 35    Next, we note that defendant failed to properly preserve the remainder of the issues raised on appeal. Defendant only properly preserved the issue of the 9-1-1 call recording. See *People v. Sebby*, 2017 IL 119445, ¶ 48 ("To preserve a purported error for consideration by a reviewing

11

court, a defendant must object to the error at trial and raise the error in a posttrial motion. [Citation.] Failure to do either results in forfeiture."). Although defendant concedes that defense counsel did not properly preserve the issues concerning the body-worn camera and Officer Kemnitz's testimony, he contends that these issues are reviewable under the first prong of plain-error doctrine, which provides for review where the evidence is "so closely balanced that the error alone threatened to tip the scales of justice against [defendant]." *Id*. Alternatively, defendant argues that defense counsel's failure to object to Officer Kemnitz's testimony and failure to include the issue of the body-worn camera footage in the posttrial motion constituted ineffective assistance of counsel. See *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We find that the outcome for defendant would be the same under either plain-error review or an ineffective assistance analysis. See *People v. White*, 2011 IL 109689.

¶ 36    "Plain-error review under the closely-balanced-evidence prong of plain error is similar to an analysis for ineffective assistance of counsel based on evidentiary error insofar as a defendant in either case must show he was prejudiced: that the evidence is so closely balanced that the alleged error alone would tip the scales of justice against him, *i.e.*, that the verdict 'may have resulted from the error and not the evidence' properly adduced at trial (see *People v. Herron*, 215 Ill. 2d 167, 178 (2005) (plain error)); or that there was a 'reasonable probability' of a different result had the evidence in question been excluded (see *Strickland*, 466 U.S. at 694)." *White*, 2011 IL 109689, ¶ 133.

¶ 37    Here, the evidence was not closely balanced and the trial court's admission of Officer Kemnitz's testimony and body-worn camera footage did not tip the scales of justice against defendant. Aside from Officer Kemnitz's testimony and the body-worn camera footage, overwhelming evidence supported defendant's conviction. The evidence at trial demonstrated that

12

security camera footage captured defendant approaching the victim's door to break it down. Following an exchange with defendant, the victim is recorded in a 9-1-1 call stating, "[Defendant] just kicked my door in and punched me." As previously discussed, we concluded that the court properly admitted the 9-1-1 call into evidence at trial. Following the 9-1-1 call, police responded and photographed the damaged door frame and the area on the victim's body that defendant allegedly struck. In addition, the State introduced, and the court admitted into evidence, two threatening voicemails that defendant left the victim. Moreover, Officer Rose testified that defendant became upset with the victim because she owed defendant $500. Even assuming, *arguendo*, the existence of error in the admission of Officer Kemnitz's testimony and body-worn camera footage, the evidence against defendant is such that he cannot show prejudice for purposes of either analysis. *White*, 2011 IL 109689, ¶ 133. Based on the overwhelming evidence against defendant, we cannot conclude that there was a reasonable probability of a different result had the evidence in question been excluded. After reviewing the record, we find that defendant cannot show prejudice. Therefore, there is "no reason to go further for purposes of either an ineffective assistance analysis or one founded upon the closely balanced prong of plain error" as both analyses are evidence-dependent and result-oriented. *Id.* ¶ 134.

¶ 38                                    III. Conclusion

¶ 39    For the foregoing reasons, we affirm the judgment of the circuit court of Macon County.


¶ 40    Affirmed.