THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TYREE A. WHITE, Defendant-Appellant.

Fourth District    No. 4—96—0875

Opinion filed December 8, 1997.

Daniel D. Yuhas, Arden J. Lang, and John H. Jackson, all of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Defendant Tyree White was accused of attempt (first degree murder) and aggravated battery with a firearm in connection with a shooting incident that occurred on June 29, 1996. 720 ILCS 5/9—1(a), 12—4.2(a) (West 1996). Defendant was acquitted of attempt, but convicted of aggravated battery with a firearm, and sentenced to eight years' imprisonment. On appeal, defendant contends he was acting in self-defense and not proved guilty beyond a reasonable doubt. We affirm.

On the evening of June 28, 1996, defendant and the victim, Ernest Harvey, were at a warehouse dance party in Champaign, Illinois. For three years prior to that evening, defendant and Harvey had a troubled relationship stemming from a 1993 fight and stabbing incident involving Harvey and members of his family against defendant and some of his friends. Defendant testified that Harvey had threatened to kill him on several occasions since the 1993 fight. Defendant had mentioned the threats to his probation officer and requested that he be transferred out of state so he could avoid the situation. Defendant's probation officer, Brad Parks, testified that defendant had requested to move to two different places.

At the party, defendant approached Harvey and attempted to make peace with him. Harvey testified that he told defendant he had nothing to say to him and walked away from defendant. Defendant testified that Harvey again threatened to kill him. Defendant left the party before Harvey and went and purchased a .12 gauge shotgun later that night.

About 3 o'clock the next morning, defendant returned home to 1523 Hedge Road, where he was living with Jacklyn Griffin, Leetisha Andrews, his girlfriend, and her mother. Twila Moore and Mark Smith were also present when he arrived. Harvey lived right across the street at 1526 Hedge Road, with Maurice Howard and his younger brother, Antonio Howard. When defendant first arrived home, he noticed Harvey's car across the street. Shortly thereafter, the car left. Assuming Harvey had left, defendant decided to go and speak with Harvey's roommate, Maurice Howard, to ask him about helping him resolve things with Harvey. Defendant testified that he took his shotgun with him and placed it by a car in the driveway next door in case Harvey returned and tried to carry out his earlier threat. Defendant pumped a live round into the shotgun so that it was ready to fire when he placed it on the ground.

Around 4 a.m., defendant knocked at the door at 1526 Hedge and Harvey's girlfriend, Okiema Coleman, opened the door. Defendant asked to speak with Maurice Howard. Maurice Howard came out and

had a conversation with defendant in the front yard. Howard assured defendant that he was going to help settle things between defendant and Harvey. As the two spoke, Maurice's brother, Antonio Howard, drove up and joined in the conversation.

Meanwhile, Harvey was inside the house. Harvey testified that he decided to come outside and join the conversation and brought a pistol with him for protection, which he concealed in his pocket. Harvey began yelling at defendant, but defendant did not yell in return. Defendant pleaded with Harvey to resolve the situation and repeatedly asked Harvey to "leave it alone." Harvey kept repeating, "It's not over till I say it's over."

At this point, testimony varies as to what happened. Defendant testified that Maurice and Antonio began walking back toward their house, followed by Harvey. Defendant also started walking back to his home, but he remembered he left his shotgun in the driveway next door, so he headed there to retrieve it. Defendant testified that when he looked back, he saw Harvey standing right under the porch light with a black .380 gun aimed at him. Defendant heard a "click" coming from Harvey's direction, as he started to bend over to grab his shotgun. Defendant claims that Harvey shot first and then defendant shot toward the bush where Harvey was standing and heard him cry. Harvey was shot in the head and face with buckshot, causing him to be permanently blind in one eye. Defendant then ran from the scene of the incident and dropped the shotgun.

Two eyewitnesses also claim that Harvey shot first. Twila Moore and Mark Smith testified that they were standing across the street in the driveway at 1523 Hedge. Smith testified he could see Harvey under the porch light, but could not really see defendant. He stated that "it appeared that [Harvey] shot first." Moore testified that she saw Harvey duck behind a bush and shoot at defendant, and then defendant shot back.

Harvey testified that he took his gun from his pocket when he noticed that defendant had a gun. He admitted that he shot his gun at defendant but that the shots were fired at the same time. Maurice and Antonio Howard also testified that the shots were simultaneous. Maurice testified that defendant had picked something up and put it behind his back. Thinking it was a gun, he decided to enter the house, followed by his brother, Antonio. Maurice and Antonio were already in the house when they heard a click, like someone was loading a gun, and then one shot fired. Maurice thought it must have been from a big gun because of the loud noise. Antonio stated they must have shot at the same time because he only heard one shot fired.

■ For the State to convict defendant of aggravated battery with

a firearm, it must prove beyond a reasonable doubt that he intentionally discharged a firearm while committing a battery, causing an injury to another person. 720 ILCS 5/12—4.2(a) (West 1996). When a defendant raises the question of reasonable doubt on review, the relevant inquiry is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 560, 573, 99 S. Ct. 2781, 2789 (1979); see also *People v. Burrows*, 148 Ill. 2d 196, 225, 592 N.E.2d 997, 1009 (1992).

■ Defendant raises the affirmative defense of self-defense. The elements of self-defense are (1) that unlawful force is threatened against a person; (2) that the person threatened is not the aggressor; (3) that the danger of harm is imminent; and (4) that the use of force was necessary. *People v. Alcazar*, 173 Ill. App. 3d 344, 349, 527 N.E.2d 325, 328 (1988). Once raised, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the other elements of the offense beyond a reasonable doubt. *People v. Seiber*, 76 Ill. App. 3d 9, 13, 394 N.E.2d 1044, 1048 (1979). The standard of review for this element is the same as for every other element: whether any rational trier of fact could have found beyond a reasonable doubt that defendant was not acting in self-defense. *People v. Newbern*, 219 Ill. App. 3d 333, 342, 579 N.E.2d 583, 589 (1991).

■ We note at the outset that there is evidence that defendant, the victim, or both could have been the aggressor at the moment of the shooting. We do not believe either's behavior was reasonable or necessary, regardless of who actually fired first. This case appears to be a mutual combat situation, where both parties fought willingly upon equal terms. The perfect defense of self-defense is not available in such a situation.

We believe a rational jury could find beyond a reasonable doubt that defendant did not act in self-defense, but instigated the entire incident or mutually entered into it. Viewing the incident as a whole, defendant was far from blameless. Defendant purchased a shotgun that very evening, loaded and pumped it, and brought it with him in the middle of the night to the residence of a person who had been threatening to kill him for three years. After a heated argument, defendant then went and picked up the shotgun in view of the victim. A defendant may not claim self-defense when the perilous situation he encountered arose from his own aggressive conduct. *People v. Gvojic*, 160 Ill. App. 3d 1065, 1070, 513 N.E.2d 1083, 1086 (1987).

In *People v. Sloan*, 111 Ill. 2d 517, 490 N.E.2d 1260 (1986), the de-

fendant went to his ex-girlfriend's house with a shotgun at 2 a.m. He claimed he wanted to see his infant daughter and brought the shotgun only for protection. When defendant pushed his way into the residence, his ex-girlfriend's current boyfriend came at him in the dark. Defendant shot the boyfriend and claimed self-defense. The court rejected the self-defense claim because the defendant had provoked the use of force against himself. *Sloan*, 111 Ill. 2d at 521, 490 N.E.2d at 1262.

Here, the defendant is prevented from claiming self-defense for the same reason. A rational jury could find defendant's conduct was not a reasonable or necessary response to the victim's earlier threats, and, therefore, he was not justified in shooting the victim.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

GARMAN and STEIGMANN, JJ., concur.