THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT FRANCIS, Defendant-Appellant.

Fourth District    No. 4—99—0053

Opinion filed October 14, 1999.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Jennifer Albright, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In November 1998, a jury convicted defendant, Robert Francis, of aggravated assault (720 ILCS 5/12—2(a)(1) (West 1998)). The trial

court later sentenced him to probation subject to certain conditions. Defendant appeals, arguing that the trial court erred by refusing his request to instruct the jury on self-defense. Because we agree, we reverse and remand for a new trial.

## I. BACKGROUND

The aggravated assault charge against defendant alleged that on September 1, 1998, he, in committing an assault, used a deadly weapon, "in that he knowingly pointed a knife at Donald Maybell[ ] and swung the knife at Donald Maybell, thereby placing Donald Maybell in reasonable apprehension of receiving a battery." At defendant's trial, Maybell testified as follows concerning the September 1 incident.

Maybell and defendant lived in the same neighborhood and occasionally socialized together. Sometime before September 1, Maybell loaned defendant $170. Defendant promised Maybell that he would pay him back on September 1, when defendant expected to receive his disability check.

On September 1, Maybell visited defendant's residence to ask about the money he was due. Defendant told Maybell that the state had "messed his check up" and he had not received it.

Maybell returned to his home, where Thomas Johnson was visiting with Maybell's girlfriend and her two children. Sometime later, Maybell noticed defendant's wife, Emma, from whom defendant was separated, pick defendant up from his residence and drive away. Maybell had noticed that Emma usually picked defendant up on the days that he received his check from the state. Because Maybell did not believe that defendant had not received his check, he decided to follow Emma's vehicle. Johnson joined him.

Emma drove to a grocery store that had a bank inside. When defendant got out of Emma's vehicle and went inside the store, Maybell asked Johnson to go inside to see if defendant cashed a check. Johnson entered the store and, when he returned, he told Maybell that defendant had cashed a check.

At that point, Maybell saw defendant leaving the store and blew his car horn. Defendant went over to Maybell's vehicle, swore at Maybell, and accused Maybell of following him. Maybell responded that he just wanted his money and believed defendant had received his check.

Defendant screamed at Maybell, "You don't know who you are fucking with." He then pulled a knife from his back pocket and unfolded it. Maybell stepped out of his vehicle, put his arms in the air, and screamed "at the top of [his] lungs, 'I'm not threatening this man and this man has a knife on me.'" Defendant pointed the knife at Maybell and made some swinging motions in the direction of May-

bell's face and stomach. Although the knife never actually touched Maybell, he described it as "about a 1/2 inch away, something like that." At the same time, defendant kept repeating, "Do you know who you are fucking with? I'll kill you."

While this was going on, Johnson got out of Maybell's vehicle, and Maybell told him to get back in. Johnson complied. While Johnson was out of the vehicle, he neither threatened defendant nor displayed any weapon.

When Maybell could see the police speeding toward the grocery store, defendant put the knife away and got into Emma's vehicle. When the police arrived, Maybell and Johnson cooperated and told them what had happened.

Marsha Crane, who was present in the grocery store parking lot on the day in question and not acquainted with either defendant or Maybell, testified to hearing "unpleasant, fighting language" in the parking lot and seeing two men "in each other's face," engaged in a "loud and ugly" argument. She saw that defendant was holding a big knife that looked "like a dagger" under the rib cage of the other man. The knife was not quite touching him, but it looked like defendant "was going to stab" the other man, who was holding his arms straight up in the air. As the police arrived, Crane saw defendant run to another vehicle that then drove away. During the argument, Crane noticed another man in the background. Although she "wasn't focused on him," she said that he was watching the fight and did not seem to be doing anything threatening.

The police arrested defendant a short distance from the grocery store and found a knife inside his wife's car. Both Crane and Maybell identified the knife as the one they saw defendant with on September 1.

Defendant testified as follows. He was 54 years old at the time of trial and was receiving disability benefits due to job-related injuries to his legs. Because of those injuries, he cannot walk or stand for long periods of time, and he cannot run at all. He receives two monthly disability payments: $98 on the first of the month and $410 on the third. On September 1, 1998, Maybell and Johnson came to defendant's residence, and Maybell argued with defendant about the money defendant owed him. Defendant said that he would pay Maybell on the third of the month, when he received the larger check, just as defendant had in the past when he had previously borrowed money from Maybell. A loud argument ensued and, as Maybell was leaving, he told defendant that Maybell was "going to get [his] money or else."

Emma, who was present during the argument, then drove defendant to the grocery store so that he could cash his check at the bank

inside. While at the bank, defendant noticed Johnson watching him. Defendant described Johnson as in his early thirties.

After defendant cashed his check, he left the store, and Johnson ran out in front of him. As defendant walked into the parking lot, Maybell's vehicle drove up and stopped, and Maybell got out. Maybell walked toward defendant, while Johnson walked behind defendant, getting "pretty close." Maybell said, "We are going to send you to prison," and defendant noticed that Johnson had a pipe in his hand.

Defendant testified that he then thought they were going to rob him. That is why he pulled the knife from his back pocket and told Maybell that defendant would pay him on the third. Maybell responded that he wanted his "damn money now." As they spoke, defendant testified that he had the knife open in his hand but never "raised it." Defendant further explained that he was afraid Maybell and Johnson were going to physically hurt him when he saw Johnson go behind him. He was also afraid that they were going to take his money. He told Maybell to leave him alone. The incident ended when defendant walked to Emma's vehicle, got in, and Emma drove off. When the police stopped Emma's vehicle shortly afterward, defendant told the police basically the same thing he told the jury.

On cross-examination, defendant conceded that he swung the knife at Maybell, who had his hands in the air, even though defendant was primarily concerned about Johnson, who was behind defendant with the pipe in his hands. Defendant also conceded that Johnson never swung the pipe at him.

A police officer who stopped Emma's vehicle shortly after the incident testified that he spoke to defendant, who told the officer that he had been threatened in the parking lot by two men, one of whom had a pipe, or something like that, in his hands. The police searched the parking lot and Maybell's vehicle but did not find a pipe.

After both sides rested, defendant asked the court to instruct the jury on self-defense and tendered the appropriate instructions. The State objected, and the trial court sustained the objection and refused the instructions. The jury later returned a verdict convicting defendant of aggravated assault, and this appeal followed.

## II. ANALYSIS

Defendant's arguments on appeal pertain to the trial court's rejection of his self-defense instructions. Specifically, defendant argues that the court incorrectly concluded that (1) as a matter of law, self-defense does not apply in aggravated assault cases, and (2) even if it did apply, the record in this case did not support giving the self-defense instruction. In response, the State contends that (a) the court did not conclude

that self-defense could never apply to an aggravated assault case, and (b) the court correctly rejected defendant's request to instruct the jury on self-defense. For the reasons that follow, we conclude that the trial court did rule as defendant claims, and both rulings were wrong.

## A. The Applicability of Self-Defense to the Charge of Aggravated Assault

■■ We first address whether a defendant can assert self-defense in an aggravated assault case. The self-defense claims that defendant contends apply are set forth in section 7—1 (use of force in defense of person) and section 7—3 (use of force in defense of other property) of the Criminal Code of 1961 (Code) (720 ILCS 5/7—1, 7—3 (West 1998)). Section 7—1 of the Code reads as follows:

"Use of Force in Defense of Person. A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." 720 ILCS 5/7—1 (West 1998).

Section 7—3 of the Code reads as follows:

"Use of Force in Defense of Other Property. A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's trespass on or other tortious or criminal interference with either real property (other than a dwelling) or personal property, lawfully in his possession or in the possession of another who is a member of his immediate family or household or of a person whose property he has a legal duty to protect. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent the commission of a forcible felony." 720 ILCS 5/7—3 (West 1998).

Defendant argues that the trial court erred by not instructing the jury on self-defense under both section 7—1 and section 7—3 of the Code. In response to defendant's request, the court questioned whether self-defense could apply to a charge of aggravated assault, when, as here, defendant was not charged with stabbing the alleged victim with a knife, but instead was charged with "using" a knife only in the broadest sense—by swinging and pointing it at the victim—while placing the victim in reasonable apprehension of receiving a battery. When the court and counsel discussed proposed jury instructions, the court explained its concerns to defense counsel as follows:

"What is the use of force? You have to have a show of force here. *** [I]s there a difference between a show of force and the use of force? You're talking about a person who is justified in the use of force. What force did your client use? Isn't there a difference between show of force and use of force?
***

THE COURT: Your client didn't use force, he only showed force.

[Defense Counsel]: He showed the force.

THE COURT: Is there a difference? And assuming there is no difference, wouldn't you need both paragraphs because isn't this deadly force that he used?
***

THE COURT: [T]here's two questions here. The first one is: [D]o you get self-defense when you don't use force, just show it? Is the show of force the same as use of force?

And then the second question is: If you get self-defense here or defense of property, don't you have to show—don't you have to give [the] deadly force [second paragraph of the instruction] because he *** believes [the use of force intended or likely to cause] death or great bodily harm 'is necessary to prevent the imminent use of great bodily harm to himself'?
* * *

[Defense Counsel]: *** I would argue that because of his fear that he was going to be robbed of his money or because of his fear that they would force him and do him harm that he was trying to preempt that and use the threat of force himself to get them to back away.

I guess what I'm confused on is what your questioning is whether we can even use it.

THE COURT: There's a double question here: Whether you can use it at all; and if you do get it, wouldn't it have to be the deadly force one because if use of force is the same as show of force, then since he used a weapon, especially the size of the knife that we have here, isn't that deadly force?"

The trial court eventually ruled that defendant's proposed self-defense instruction did not apply to this case. Although the court also discussed alleged evidentiary deficiencies regarding defendant's request for those instructions, it initially ruled that, "First of all, I believe a show of force is different than a use of force." Further, when the court later addressed this same issue in denying defendant's post-trial motion, it ruled that defense counsel had not provided the court any cases "that would allow justifiable use of force in an assault-type situation."

■ We conclude that the trial court erred in its ruling that the self-

defense instruction should not be given in this case because defendant did not "use" a knife, but instead merely "showed" it. We hold that within the meaning of both sections 7—1 and 7—3 of the Code, a person is engaged "in the use of force against another" (720 ILCS 5/7—1, 7—3 (West 1998)) when, as here, he shows that other person a deadly weapon, such as a knife or a gun, with the intent thereby (1) to cause that other person to refrain from what the defendant believed was the other person's imminent use of unlawful force against the defendant (section 7—1), or (2) to prevent the commission of a robbery by threat of force (section 7—3). Thus, a defendant charged with aggravated assault may assert self-defense even though he never "used" a deadly weapon against the third person by stabbing or shooting that person.

To hold otherwise would provide an incentive for an aggravated assault defendant in a case like this to stab the people he believes are threatening him with the imminent use of unlawful force, rather than merely to threaten them with a knife. Such a holding would be a perversion of this state's public policy, which seeks to minimize violence and violent confrontations to the extent possible.

An alternative factual context may help clarify our holding. Consider a scenario in which a defendant is charged with aggravated assault because he committed an assault while armed with a gun. Assume further that he testifies at his trial that he pulled the gun and showed it to the two alleged victims because they both had knives in their hands and had threatened to kill him. Under the position adopted by the trial court in the present case, the defendant could not have the jury instructed on self-defense because he did not "use" his gun; instead, he only showed it to the alleged victims. Yet, under those same facts, if he had fired the gun and shot one of his purported knife-wielding assailants, he could have undoubtedly asserted self-defense under Illinois law. (The success of that defense would, of course, depend upon the jury's assessment of the credibility of the witnesses and whether the State was able to prove beyond a reasonable doubt that the defendant was not justified in the force he used.) This perverse result cannot be what the legislature intended when it enacted sections 7—1 and 7—3 of the Code.

In *People v. White*, 293 Ill. App. 3d 335, 338, 687 N.E.2d 1179, 1181 (1997), this court wrote that a defendant may assert self-defense when (1) unlawful force is threatened against the defendant; (2) the defendant is not the aggressor; (3) the danger of harm is imminent; and (4) the use of force is necessary. In *People v. Peterson*, 273 Ill. App. 3d 412, 424, 652 N.E.2d 1252, 1261 (1995), the First District Appellate Court expanded somewhat on these self-defense elements by adding

that the defendant must have actually and reasonably believed that (a) danger existed; (b) force was needed to avoid the danger; and (c) the type and amount of force used were required. This latter element—speaking of "the type and amount of force used"—supports our conclusion in this case because it suggests that a person is permitted to use no more force than necessary to deter the imminent danger of harm or injury he believes he faces. If showing a knife or a gun to an alleged assailant suffices to achieve that goal, then that is all a person should do, and all the law should permit him to do. Certainly, the law ought not provide a disincentive for that person to stop his response to the perceived danger by merely showing his knife or gun instead of actually using the weapons to stab or shoot the alleged assailant.

Although not directly on point, we further find support for our holding in *People v. Sedlacko*, 65 Ill. App. 3d 659, 664-65, 382 N.E.2d 363, 368 (1978), where the court suggested that self-defense could be used by a defendant charged with aggravated assault, but concluded that self-defense did not apply to the facts of that case.

Addressing the other question the trial court raised regarding defendant's request for self-defense instructions—namely, whether the court should instruct the jury regarding the limited circumstances in which a defendant may claim self-defense in his use of deadly force (the second paragraph of Illinois Pattern Jury Instructions, Criminal, Nos. 24—25.06 and 24—25.08 (3d ed. 1992) (hereinafter IPI Criminal 3d))—we hold that such an instruction is not warranted when, as here, the evidence shows that the defendant "used" the weapon in question only by showing it to his alleged assailants and not by stabbing or shooting them with it. The second sentences of sections 7—1 and 7—3 of the Code discuss under what circumstances deadly force by stabbing or shooting may be used. 720 ILCS 5/7—1, 7—3 (West 1998). The second sentence of section 7—1 of the Code reads as follows:

> "[A defendant] is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." 720 ILCS 5/7—1 (West 1998).

The last sentence of section 7—3 reads essentially the same except that it speaks of using such deadly force only when necessary "to prevent the commission of a forcible felony" and does not mention the need to prevent imminent death or great bodily harm. 720 ILCS 5/7—3 (West 1998). (During the conference on instructions, the parties referred to the second sentences as the "second paragraph" because

those sentences appear as the second paragraphs of IPI Criminal 3d Nos. 24—25.06 and 24—25.08.)

The trial court concluded that an instruction on the second sentences of sections 7—1 and 7—3 would be required. If the trial court's position were correct regarding the second sentences of sections 7—1 and 7—3 of the Code, then the law would recognize no difference between (1) a person who claims he was forced to deter allegedly unlawful force against himself by showing a knife or gun to the alleged assailant, and (2) a person who actually used that knife or gun to stab or shoot the alleged assailant. For the reasons stated earlier, this cannot be what the legislature intended when it enacted those sections.

### B. Sufficiency of the Evidence To Raise Self-Defense

Last, defendant argues that the record contains sufficient evidence in support of his self-defense claim to require the trial court to give the self-defense instructions as defendant requested. We agree.

In *People v. Crane*, 145 Ill. 2d 520, 526, 585 N.E.2d 99, 102 (1991), the supreme court wrote that a defendant is entitled to an instruction on his theory of the case if some foundation for the instruction exists in the evidence. Once that foundation is established, a trial court abuses its discretion if it refuses to so instruct the jury. See *People v. Jones*, 175 Ill. 2d 126, 132, 676 N.E.2d 646, 649 (1997) (very slight evidence upon a given theory of a case will justify the giving of an instruction.) In *People v. Dailey*, 188 Ill. App. 3d 683, 688, 544 N.E.2d 449, 453 (1989), this court held that a defendant is entitled to have a jury consider his claim of justifiable use of force even when the evidence concerning that theory is very slight, inconsistent, or of doubtful credibility. Considering the evidence of record in this case in accordance with those standards, we reject the State's argument that the self-defense instruction should not have been given because "defendant's testimony was not corroborated by any other witnesses or any of the State's evidence." This argument—that self-defense cannot be based solely on the defendant's own testimony—is unsupported in Illinois law and totally groundless.

In rejecting defendant's request for self-defense instructions, the trial court commented that it had doubts about the sufficiency of the evidence to show that defendant acted in self-defense. The court noted:

> "The only testimony is [defendant] saw a man moving with a pipe in his hand. There's no showing anyone said that he was going to be hit. *** The only showing is that he would go to prison. ***
>
> So there's no showing that *** this defendant here could believe that it was necessary to defend himself against the imminent use of unlawful force."

The State additionally argues that self-defense does not apply in this case because defendant conceded that he was facing Maybell when he was holding the knife, even though defendant feared that Johnson might strike him from behind with the pipe. The State contends that although defendant's testimony "may establish some evidence that defendant acted in self-defense with respect to Johnson, it proves he did not act to defend himself from any threatened use of force by Maybell," the alleged victim of defendant's aggravated assault. We disagree.

According to defendant's testimony, he was confronted by two hostile men, who were acting in concert. Maybell was making threats, while Johnson was holding a pipe, a potentially deadly weapon. Based upon defendant's testimony, the jury could have concluded that defendant actually and reasonably believed he could prevent Johnson from attacking him by confronting Maybell and displaying his knife. Such a conclusion would bring the facts of this case squarely within the ambit of sections 7—1 and 7—3 of the Code.

For the reasons stated, we conclude that the evidence in this case was sufficient to require the trial court to instruct the jury on self-defense as defendant requested. The court's failing to do so requires reversal of defendant's conviction and remand for a new trial. See *Dailey*, 188 Ill. App. 3d at 688, 544 N.E.2d at 453.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for a new trial.

Reversed and remanded.

KNECHT, P.J., and COOK, J., concur.