Filed 4/21/08        NO. 4-07-0182

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: T.W., a Minor, | ) | Appeal from |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Circuit Court of |
|      Petitioner-Appellee, | ) | Vermilion County |
|      v. | ) | No. 06JD183 |
| T.W., | ) | |
|      Respondent-Appellant. | ) | Honorable |
| | ) | Craig H. DeArmond, |
| | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the opinion of the court:

In October 2006, the State filed an amended petition for adjudication of wardship, alleging respondent, T.W., was a delinquent minor following the commission of the offenses of battery and disorderly conduct. In January 2007, the trial court adjudicated respondent delinquent based on a finding of guilty on all counts. In February 2007, the court found it in respondent's best interest that she be made a ward of the court and sentenced her to 24 months' probation.

On appeal, respondent argues (1) the trial court erred in finding probable cause of delinquency at the detention hearing, (2) her trial counsel was ineffective, (3) the State failed to prove her guilty of battery, and (4) her disorderly conduct adjudication should be reversed. We affirm in part and vacate in part.

I. BACKGROUND

In October 2006, the State filed an amended petition for adjudication of wardship, alleging respondent was a delinquent minor. The petition charged respondent with two counts of battery (720 ILCS 5/12-3(a)(1), (a)(2) (West 2006)), alleging that on September 12, 2006, she knowingly and without legal justification caused bodily harm to and made physical contact of an insulting or provoking nature with Alexis S. The petition also charged respondent with disorderly conduct (720 ILCS 5/26-1(a)(1) (West 2006)), alleging that on October 20, 2006, she knowingly engaged in certain conduct, fighting on a school bus, in such an unreasonable manner as to alarm or disturb Mark Goodwin and to provoke a breach of the peace.

In November 2006, the trial court conducted a detention hearing. The court called respondent and her mother, Tanya W., and questioned them under oath. Respondent testified she was 13 years old and a student at North Ridge Middle School. The court confirmed respondent and her mother received the amended petition and appointed the public defender. The court read the charges to respondent, explained the possible sentences, and admonished her as to her right to a trial.

The trial court then told Tanya W. that it had the option of putting respondent in detention if she testified her daughter was beyond her control. Tanya indicated she would like the court to address the issue of detention. The court then told

- 2 -

the prosecutor to call respondent's mother as a witness. Tanya testified respondent had been kicked out of school for 10 days. She stated respondent does not follow rules well at home and has run away. Tanya stated she tried to control her daughter but it was hard considering she was a single parent and respondent did not listen to her.

The trial court found probable cause to believe respondent was delinquent. The court also found it was a matter of immediate and urgent necessity that respondent be detained pending the next court date. The court found no custodial alternative.

In January 2007, the trial court conducted the adjudicatory hearing. Alexis S. stated she was five years old. She testified to a situation a few months prior to the hearing where four girls came up to her and her friend "down by [her] old bus thingy [sic]." One girl came up to her, smacked her on the cheek, and pulled her hair. Later, Alexis's father arrived, as did the police. She pointed to one of the girls, but she did not think she would remember what the girl looked like if she saw her again.

Jeff S. testified he returned home from work on September 12, 2006, and stated his "wife was gone and said somebody had smacked and pulled Alexis's hair." He later found four girls and asked which one smacked his daughter and pulled her hair. The

- 3 -

girls pointed at a girl down the road. Jeff S. went down and talked with the girl's mother. He explained to her that the four girls identified her daughter as the one who hit Alexis in the face and pulled her hair. The mother stated the four girls came to her house and started problems with her daughter. During this time period, a police officer arrived on the scene.

With an officer present, Jeff S. asked Alexis which one of the girls pulled her hair and smacked her. He held Alexis in his arms and pointed at each girl and asked her if that was the girl that hit her. Alexis responded in the negative as to the first three girls and positively to the last girl. Jeff S. described the girl as a young, heavyset African-American female wearing a blue shirt and blue jeans.

Danville police officer Eric Olsen testified he was approached by Jeff S. on September 12, 2006, with the report that one of four girls in the area had struck his daughter. Olsen stated Jeff S. pointed at each girl and asked Alexis if one of the girls hit her. Alexis said no to the first three girls and yes to respondent. Olsen made an in-court identification of respondent.

Officer Olsen then questioned respondent. She told him she was walking home with three friends when they observed Alexis outside her residence. The girls asked Alexis for a glass of water and she said no. Respondent stated her friend Tambriesha

then struck Alexis in the face. Two of the other girls' mothers arrived and told him Shateri had been the one who pushed Alexis.

Mark Goodwin testified he was the principal at North Ridge Middle School. On October 20, 2006, Goodwin stated two students were fighting on a school bus. He and another staff member entered the bus and separated the two female students, who were hitting each other and pulling hair. Goodwin identified one of the girls as respondent. Because the bus was full, Goodwin was concerned with the risk of other students being injured.

On cross-examination, Goodwin stated the other female involved in the fight was Porsha E. He did not recall if she was involved in other fights prior to this incident. He also stated Porsha got into an altercation with respondent's sister after she was taken off the bus.

Respondent testified Porsha threatened to "beat [her] butt" when she got on the school bus. Porsha told others that respondent called the police on her at school, which respondent denied. Respondent testified Porsha "jumped up in [her] face" and "swung off" her. Respondent then hit her back, and the girls began fighting. When asked to leave the bus, respondent initially refused because she feared for her sister's safety.

Following closing arguments, the trial court found respondent guilty on all three counts and adjudicated her delinquent. As to the battery charges, the court found it clear the

victim identified one of the four girls and respondent was the girl identified per the testimony of Officer Olsen. Jeff S.'s testimony that he pointed to each girl and asked Alexis if each one hit her offered "further credibility to [Alexis's] ability to identify." On the disorderly-conduct count, the court found respondent engaged in a fight in an unreasonable manner so as to alarm and disturb Goodwin and provoke a breach of the peace.

In February 2007, the trial court found it in respondent's best interest that she be made a ward of the court. The court sentenced her to 24 months' probation with the first 30 days to be served in the juvenile detention center. This appeal followed.

## II. ANALYSIS

### A. Detention Hearing

Respondent argues the trial court erred in finding (1) probable cause of delinquency without hearing evidence concerning the allegations in the State's amended petition and (2) an immediate and urgent necessity that respondent be detained despite no evidence of probable cause. The State argues these issues are moot since respondent is no longer detained and has been found delinquent of the charges. We agree with the State.

> "It is a basic tenet of justiciability
> that reviewing courts will not decide moot or
> abstract questions or render advisory opin-

- 6 -

ions. [Citation.] An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party." In re J.T., 221 Ill. 2d 338, 349-50, 851 N.E.2d 1, 7-8 (2006).

In the case sub judice, respondent concedes she is no longer detained and has been found delinquent of the charges. Thus, any decision by this court on this issue would be advisory in nature as it would be impossible to grant any effectual relief to her. Accordingly, we find this issue moot.

Respondent, however, contends this court should address the issue of finding probable cause at the detention hearing, claiming it is an important question of public interest that will routinely evade review.

"Application of the public[-]interest exception requires (1) the existence of a question of public importance; (2) the desirability of an authoritative determination for the purpose of guiding public officers in the performance of their duties; and (3) the likelihood that the question will recur." J.T.,

221 Ill. 2d at 350, 851 N.E.2d at 8.

Another exception to the mootness doctrine involves factual scenarios of short duration that are capable of repetition yet evade review. In re Marie M., 374 Ill. App. 3d 913, 915, 873 N.E.2d 393, 395 (2007). "For this exception to apply, the complaining party must demonstrate (1) the challenged action is too short in duration to be fully litigated prior to becoming moot, and (2) a reasonable expectation exists the complaining party will be subjected to the same action again." Marie M., 374 Ill. App. 3d at 915, 873 N.E.2d at 395.

Here, neither exception applies to this case. The exception for cases of short duration evading review does not apply because no expectation arises that respondent will be subject to the same action again. With respect to the public-interest exception, we agree the pretrial detention of juveniles and the evidence considered by trial courts in making a detention determination are questions of public importance. However, we find no need for an authoritative determination for the purpose of guiding public officers in the performance of their duties. The protections afforded juveniles in regard to detention hearings, e.g., a probable-cause finding on delinquency and the finding it is a matter of "immediate and urgent necessity" for the protection of the minor or others that the minor be detained, are fully set out in section 5-501 of the Juvenile Court Act of

1987 (705 ILCS 405/5-501 (West 2006)) and addressed in the relevant case law (see In re C.J., 328 Ill. App. 3d 103, 112-13, 764 N.E.2d 1153, 1160 (2002); In re S.I., 234 Ill. App. 3d 707, 712, 600 N.E.2d 889, 891-92 (1992)). Accordingly, we decline to employ the public-interest exception to the mootness doctrine here.

### B. Assistance of Counsel

Respondent next argues her trial counsel was ineffective for failing to object to the trial court's questioning of her before the finding of probable cause and for failing to object to the finding of probable cause. However, our analysis on the detention hearing renders moot respondent's second issue regarding the assistance of counsel at that hearing.

### C. Sufficiency of the Evidence

Respondent argues the State failed to prove her guilty of battery beyond a reasonable doubt. We disagree.

When a delinquency petition is filed, the State must prove the elements of the substantive offense charged beyond a reasonable doubt. In re Ryan B., 212 Ill. 2d 226, 231, 817 N.E.2d 495, 498 (2004). A reviewing court will not overturn a trial court's delinquency finding "unless, after viewing the evidence in the light most favorable to the State, no rational fact finder could have found the offenses proved beyond a reasonable doubt." In re Gino W., 354 Ill. App. 3d 775, 777, 822

- 9 -

N.E.2d 592, 594 (2005). The trier of fact has the responsibility to determine the credibility of witnesses, to resolve conflicts in the evidence, and to draw reasonable inferences from that evidence. Gino W., 354 Ill. App. 3d at 777, 822 N.E.2d at 594.

"A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a) (West 2006).

"The State bears the burden of proving beyond a reasonable doubt the identity of the person who committed the charged offense." People v. Lewis, 165 Ill. 2d 305, 356, 651 N.E.2d 72, 96 (1995). Although an identification that is vague or doubtful is insufficient to support a conviction, "a single witness'[s] identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification." Lewis, 165 Ill. 2d at 356, 651 N.E.2d at 96.

> "In evaluating identification testimony,
> Illinois courts consider the factors set
> forth in Neil v. Biggers, 409 U.S. 188, 199-
> 200, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375,
> 382 (1972), which are (1) the witness's op-
> portunity to view the criminal at the time of

the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the witness's level of certainty at the identification confrontation; and (5) the length of time between the crime and the identification confrontation." People v. Standley, 364 Ill. App. 3d 1008, 1014, 848 N.E.2d 195, 200 (2006).

Here, Alexis testified a girl came up to her, smacked her on the cheek, and pulled her hair. The evidence indicated Alexis had ample opportunity to view the offender at the time of the crime as it was during the daylight and shortly after school had been let out. Being smacked in the face and having one's hair pulled surely grabs one's attention. When Jeff S. asked his daughter which of the four girls hit her, Alexis identified respondent. Nothing in the evidence indicated any hesitation or prompting in her identification. Finally, little time passed between the incident and Alexis's identification of respondent.

Jeff S. testified he asked Alexis which of the four girls hit her. As he pointed to each one, Alexis responded in the negative until he asked about the last girl, an African-American female. Officer Olsen testified he witnessed the questioning by Jeff S. of Alexis and her identification of

respondent.

At trial, Alexis was unable to make an in-court identification.  Section 115-12 of the Code of Criminal Procedure of 1963 provides that testimony regarding a declarant's prior out-of-court statement of identification is not rendered inadmissible by the hearsay rule if "(a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him."  725 ILCS 5/115-12 (West 2006).

Here, Alexis testified at trial and was subject to cross-examination.  Further, the statement was one of identification made by the victim after perceiving respondent on the day of the incident.  Thus, Officer Olsen's testimony as to Alexis's prior identification was admissible as substantive evidence.  Based on the evidence presented, a rational trier of fact could have found the State proved the offense of battery beyond a reasonable doubt.

### D. Disorderly Conduct

Respondent argues her disorderly-conduct adjudication should be reversed because (1) contrary to the trial court's ruling, self-defense is an affirmative defense to disorderly conduct, and (2) the evidence showed she acted in self-defense.  We agree.

"A charge of disorderly conduct requires a showing that the accused knowingly acted in such an unreasonable manner as to alarm or disturb another and to provoke a breach of the peace. 720 ILCS 5/26-1 (West 1994). The offense embraces a wide variety of conduct serving to destroy or menace the public order and tranquility. The offense may include not only violent acts, but acts and words likely to produce violence in others." In re B.C., 176 Ill. 2d 536, 551-52, 680 N.E.2d 1355, 1363 (1997).

Under section 7-1(a) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/7-1(a) (West 2006)), "[a] person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force."

In finding respondent guilty on the disorderly-conduct count, the trial court stated, in part, as follows:

"The [d]isorderly [c]onduct, interestingly, that turns out to be charged as a disorderly conduct and not a battery so I'm not sure that self-defense is even a defense,

- 13 -

an affirmative defense to disorderly conduct. It would be an affirmative defense to a battery. The issue here, though, isn't whether it was a battery, it was whether by engaging in a fight on a school bus she engaged in conduct in such an unreasonable manner as to alarm and disturb Mr. Goodwin and provoke a breach of the peace. That's clear from the testimony the fact that the bus driver had to stop the bus before they even get out of the parking lot, that it was necessary for school staff to enter the bus. It was necessary for them to break the fight up and to remove the minor from the scene in order to bring order back to the bus. That evidence is more than enough to establish an offense of disorderly conduct. Maybe not a battery, might have been a good--good defense to a battery, but this isn't a battery, it's a disorderly conduct by engaging in a fight in an unreasonable manner as to alarm and disturb Mr. Goodwin and provoke a breach of the peace."

Respondent claims no authority supports the trial court's conclusion that self-defense was not available as an

affirmative defense to the charge of disorderly conduct. We have found no Illinois authority allowing or denying the affirmative defense in the situation presented here. Thus, this matter appears to be one of first impression in Illinois.

"[T]he law of self-defense applies in both criminal and civil cases." First Midwest Bank of Waukegan v. Denson, 205 Ill. App. 3d 124, 129, 562 N.E.2d 1256, 1259 (1990). The affirmative defense of self-defense has been raised in criminal cases involving murder (People v. Lee, 213 Ill. 2d 218, 224, 821 N.E.2d 307, 311 (2004)), domestic battery (People v. Grayson, 321 Ill. App. 3d 397, 402, 747 N.E.2d 460, 464-65 (2001)), battery and resisting arrest (People v. Sims, 374 Ill. App. 3d 427, 431-32, 871 N.E.2d 153, 157 (2007)), and aggravated battery in a place of public accommodation (People v. Dillard, 319 Ill. App. 3d 102, 105-06, 745 N.E.2d 185, 188 (2001)), just to name a few.

Courts in other jurisdictions have allowed a defendant charged with disorderly conduct to assert self-defense. See S.D.G. v. State, 919 So. 2d 704, 705 (Fla. Dist. App. 2006) (in this disorderly-conduct case, "[w]here a defendant did not initiate the fight, and was acting to protect herself from her attacker, the defense of self-defense applies"); State v. Soukup, 656 N.W.2d 424, 429 (Minn. App. 2003) ("self-defense is applicable to a charge of disorderly conduct where the behavior forming the basis of the offense presents the threat of bodily harm");

- 15 -

D.M.L. v. State, 773 So. 2d 1216, 1217 (Fla. Dist. App. 2000) ("Self-defense may be used as a defense to a charge of disorderly conduct provided that the person charged did not provoke the fight"); State v. Schumaier, 603 N.W.2d 882, 885 (N.D. 1999) ("self-defense may be asserted in appropriate cases by defendants charged with disorderly conduct"). Courts have also allowed other justification defenses to a disorderly-conduct charge. See State v. Hauenstein, 121 Ohio App. 3d 511, 517, 700 N.E.2d 378, 379-81 (1997) (defense of parental discipline was proper for charge of disorderly conduct); City of Chicago v. Mayer, 56 Ill. 2d 366, 370, 308 N.E.2d 601, 603-04 (1974) (the defendant was entitled to an instruction on the defense of necessity as to charge of disorderly conduct).

In this case, nothing in section 7-1 of the Criminal Code restricts the use of force in self-defense depending on the nature of the charge. Moreover, the alleged action taken by Porsha toward respondent constituted an offense of a physical nature and carried with it the potential to cause bodily harm. Considering Porsha's alleged conduct could constitute a battery, respondent was entitled to defend herself. Thus, we find the affirmative defense of self-defense applies in this situation to the charge of disorderly conduct.

The State argues even if the trial court erred in stating self-defense is not a defense to disorderly conduct, any

- 16 -

error was harmless where the evidence presented did not rise to the level of self-defense.

> "Self-defense is an affirmative defense, and once a defendant raises it, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense. [Citation.] The elements of self-defense are: (1) that unlawful force was threatened against a person; (2) that the person threatened was not the aggressor; (3) that the danger of harm was imminent; (4) that the use of force was necessary; (5) that the person threatened actually and subjectively believed a danger existed that required the use of the force applied; and (6) the beliefs of the person threatened were objectively reasonable." Lee, 213 Ill. 2d at 224-25, 821 N.E.2d at 311.

If the State negates any one of the six elements, the defendant's self-defense claim fails. Lee, 213 Ill. 2d at 225, 821 N.E.2d at 311.

> Here, respondent testified Porsha threatened to "beat

- 17 -

[her] butt" when she got on the school bus.  After Porsha told others respondent had called the police on her, which respondent denied, Porsha "jumped up in [her] face" and "swung off" her. The evidence indicated Porsha was the aggressor, the danger of harm to respondent was imminent, and the use of force was necessary for respondent to defend herself.  Further, respondent stated she was trying to keep Porsha from fighting with her. Given Porsha's threats and taking a swing at respondent in the crowded school bus, respondent's belief that she was in imminent danger of harm was objectively reasonable.

The State argues Porsha was not the aggressor and respondent struck the first blow.  However, we find the evidence shows respondent acted in self-defense.  Respondent's testimony that Porsha "swung off" her amounts to an aggressive action to which respondent could rightfully respond in defense of herself.

The State argues the only evidence of self-defense was defendant's self-serving testimony.  We note the State presented no evidence that respondent did not act in self-defense.  Further, the State declined to offer any evidence in rebuttal.  The evidence also indicated Porsha continued her aggressive behavior after she was removed from the bus.  Goodwin testified Porsha got into an altercation with respondent's sister after respondent and Porsha had been separated.  This evidence lends credence to respondent's testimony that Porsha was the initial aggressor.

The State's claim that Porsha had never caused respondent trouble before was insufficient to negate the elements of self-defense.

The State also argues the girls fought willingly upon equal terms for three to four minutes, hitting each other and pulling hair. The affirmative defense of self-defense is unavailable "where both parties fought willingly upon equal terms." People v. White, 293 Ill. App. 3d 335, 338, 687 N.E.2d 1179, 1182 (1997). However, "a person who is not the initial aggressor has no duty to retreat." People v. White, 265 Ill. App. 3d 642, 651, 638 N.E.2d 314, 320 (1994). Here, the evidence was insufficient to show respondent and Porsha engaged in mutual and willing combat. Instead, the evidence indicated respondent attempted to defend herself in the crowded school bus.

Normally, this court would be reluctant to overturn a trial court's decision following a trial, considering the trier of fact is in the best position to view the demeanor of the witnesses and to determine their credibility. However, in this case and in finding respondent guilty of disorderly conduct, the trial court noted respondent's testimony "might have been a good *** defense to a battery." Thus, it appears the court would have found respondent's self-defense claim a valid defense had she been charged with battery. Because we have found self-defense applies to charges of disorderly conduct and the evidence indicated respondent acted in self-defense, the court's finding of

- 19 -

guilt on the disorderly conduct charge was against the manifest weight of the evidence. Thus, respondent's adjudications of delinquency and wardship on the disorderly-conduct count are vacated.

III. CONCLUSION

For the reasons stated, we affirm in part and vacate in part the trial court's judgment.

Affirmed in part and vacated in part.

McCULLOUGH and MYERSCOUGH, JJ., concur.