2020 IL App (2d) 180039-U
No. 2-18-0039
Order filed March 27, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CM-322 |
| CRISTY L. PIWOWAR, | ) ) | Honorable William P. Brady, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The State proved defendant guilty beyond a reasonable doubt of domestic battery, as she provoked the conflict; the evidence established beyond a reasonable doubt that striking her son's face twice exceeded the standards of reasonable parental discipline and biting his chest was not an act of self-defense.

¶ 2    Defendant, Cristy L. Piwowar, appeals her convictions of domestic battery (720 ILCS 5/12-3.2 (West 2016)) in connection with an altercation with her 15-year-old son, A.P.  Citing her affirmative defenses of parental discipline and self-defense, she contends that the State failed to prove her guilty beyond a reasonable doubt.  We affirm.

¶ 3                              I. BACKGROUND

¶ 4    Defendant was charged by complaint with two counts of misdemeanor domestic battery, alleging that she made insulting and provoking contact with A.P. by slapping him with an open hand and caused bodily harm to him by biting him on the chest. Defendant asserted the affirmative defenses of parental discipline and self-defense. In September 2017, a bench trial was held.

¶ 5    Defendant testified that, on March 29, 2017, her daughter discovered that an electronic tablet was broken. Defendant believed that A.P. had broken the tablet because he had recently broken other things in the house. Two weeks earlier, he had taken apart his stepfather's motorcycle and placed caulk in the engine. He had also broken the living room television and a laptop computer. Defendant punished A.P. by taking away his television and giving him extra chores. She also warned him that, if he broke anything else, he would have to pay to replace it.

¶ 6    Defendant went to A.P.'s room to talk to him about the tablet. A.P. admitted that he broke it, and defendant became frustrated and tossed the tablet. She said that she did not try to hit A.P. with it. She left the room and went to the garage to smoke and think about how to handle the situation. After smoking a cigar for about 30 minutes, defendant returned to A.P.'s room and told him that he must pay to replace the tablet. A.P. refused.

¶ 7    Defendant said that she picked up her slipper to hit A.P. with it but decided to put it back on. A.P. then cursed at defendant, calling her a "c***, a***, and b***." In response, defendant slapped A.P. on the face twice with an open hand. She then began breaking things in A.P.'s room, telling him "this is how it feels to have things broken, things that you care about." She broke A.P.'s piggy banks and BB guns and tried to break a bow and arrow. She then looked for A.P.'s wallet while he continued to call her names.

¶ 8    When defendant found A.P.'s wallet, A.P. unsuccessfully tried to grab it and then jumped on defendant's back, threw his arm around her neck, and pulled her onto his bed. Defendant turned

to brace herself, and her face was pressed against A.P.'s chest. She testified that she struggled and could not get free from A.P.'s hold and her head was stuck in a position where she could not breathe. She said that she told A.P. to let her go because she could not breathe, but he would not release her. Defendant then bit A.P. on the chest, and he released her. Defendant testified that the only physical contact she made with A.P. were the slaps and the bite. She said that she was not angry but was hurt and disappointed that A.P. called her names.

¶ 9    After A.P. released defendant, he picked up the wallet and walked out of the house through the garage. Defendant closed the garage door behind him so that he would not damage items in it. She then called A.P.'s father to discuss the incident.

¶ 10    At trial, A.P. admitted that he broke the tablet. He said that, when defendant came to his room, she yelled at him, she threw the tablet, and he moved to avoid it. Defendant then left and came back five minutes later. When she returned, she sternly asked him for money for the tablet, and he refused to pay for it. According to A.P., defendant then slapped him across the face with an open hand and took off her slipper and hit him with it. She then dropped the slipper and hit him with a closed fist, including "[a]nywhere and everywhere she could," while A.P. "cower[ed] into a ball." She next broke things in his room, including his piggy bank. She dropped many of his belongings on the ground, and searched his drawers, demanding money.

¶ 11    When defendant got A.P.'s wallet, A.P. grabbed her around her head and held her. A.P. said that, although it was not exactly a wrestling hold, he had defendant in a headlock. They fell back onto A.P.'s bed, with defendant's head on A.P.'s chest. A.P. testified that defendant was struggling, could not get free, and told him to let her go. However, because she was still talking, he believed that she could still breathe, and she never told him that she could not breathe. Defendant then bit him on the chest, and he let her go. A.P. grabbed the wallet and left through

the garage. There was a mark and a little blood where defendant bit him. A.P. wiped away the blood and it did not continue to bleed. Exhibits show a mark from the bite. After A.P. left, he called his father, Brian Piwowar, to pick him up. Brian testified about his observations of the mark on A.P.'s chest. Two days later, Brian's wife called the police to file a report. Defendant did not have further contact with A.P., except in therapy sessions.

¶ 12    At the conclusion of the evidence, the trial court found that defendant provoked A.P.'s use of force against her. The court ordered the parties to submit case law addressing whether the slap was parental discipline and whether self-defense applied when defendant was the initial aggressor or when A.P. was defending his property. The parties did so, and the court found defendant guilty.

¶ 13    The court found that A.P. was verbally abusive and that defendant slapped him in response. The court also found that A.P. acted inappropriately and should have been disciplined, reasonably, such as by putting soap in his mouth. The court commented, "[y]ou know, it may be one thing to spank somebody, although I'm not sure how much that is utilized these days, but striking them in the face is just not discipline." However, the court primarily found that defendant struck A.P. in the face and damaged his property out of anger, which was not disciplinary. The court stated: "that's not showing discipline, that's not teaching discipline, that's not teaching a lesson, all of which is the basis of corporal punishment. That is getting back at, being angry about, which leads to the taking of property, which again shows a lack of discipline." The court next found that A.P. had a right to defend his property and that a person seeking to take property could not claim self-defense.

¶ 14    Defendant moved to reconsider. In denying the motion, the court reaffirmed its reasoning and further stated that the potential for injury when slapping a person on the face was far greater than spanking on the buttocks. The court stated that a parent may not slap his or her kid in the face

simply because they were verbally abusive, stating that "[t]here are other forms of discipline available, both corporal as well as punitive that are available, and that's just not one of them." The court noted that A.P. reacted to defendant's destruction of property, which defeated her claim of self-defense. The court then sentenced defendant to 18 months of conditional discharge and ordered that she take parenting classes. She appeals.

¶ 15                                II. ANALYSIS

¶ 16    Defendant first contends that she was not proved guilty beyond a reasonable doubt because her act of slapping A.P. was a reasonable act of parental discipline.

¶ 17    On a challenge to the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48. The reviewing court will not retry the defendant or substitute its judgment for that of the trier of fact on issues pertaining to conflicts in testimony, the credibility of witnesses, or the weight of the evidence. *Id.* This standard of review applies regardless of whether the evidence is direct or circumstantial, and regardless of whether the defendant received a bench or jury trial. *People v. Taylor*, 2012 IL App (2d) 110222, ¶ 8.

¶ 18    A person commits domestic battery if he or she intentionally or knowingly without legal justification causes bodily harm or makes physical contact of an insulting or provoking nature to any family or household member. 720 ILCS 5/12-3.2 (West 2016). Defendant does not dispute that the State proved the elements beyond a reasonable doubt. However, defendant argues that her conduct was justified as parental discipline.

¶ 19    The parental right to discipline is not a statutory affirmative defense. *People v. Green*, 2011 IL App (2d) 091123, ¶ 16. However, the common-law rule that parents may take reasonable

steps to discipline their children when necessary is, like self-defense, a legal justification for an otherwise criminal act. *Id.* To negate that justification, the State must prove the defendant guilty beyond a reasonable doubt as to the affirmative defense together with all the other elements of the offense. *Id.* To sustain a conviction of domestic battery where a claim of parental discipline has been asserted, the State must also prove beyond a reasonable doubt that the discipline used exceeded the standards of reasonableness. *Id.*

¶ 20    The right to corporally punish one's child must be balanced against the State's interest in protecting children from mistreatment. *Id.* ¶ 14. The reasonableness of, and the need for, the punishment is to be determined by the finder of fact, under the circumstances of each case. *Id.* ¶ 24. "In considering whether an act of corporal punishment was reasonable, it is appropriate for the court to consider (1) the degree of physical injury inflicted upon the child, (2) the likelihood of future punishment that may be more injurious, (3) the fact that any injury resulted from the discipline, (4) the psychological effects on the child, and (5) the circumstances surrounding the discipline, including whether the parent was calmly attempting to discipline the child or whether the parent was lashing out in anger." (Internal quotation marks omitted.) *People v. Parrott*, 2017 IL App (3d) 150545, ¶ 25; see also *Green*, 2011 IL App (2d) 091123, ¶ 24.

¶ 21    Here, the trial court found that defendant's act of striking A.P. in the face in response to his use of foul language was unreasonable, primarily because defendant acted out of anger. As the court noted, defendant's reaction did not appear to be one of discipline. There was evidence that defendant earlier threw the tablet at A.P., who moved to avoid it, and that, around the time of the slap, she either threatened to hit him with her slipper, or actually did so, and that she hit him additional times aside from the charged slap to the face. After defendant struck A.P. in the face,

she proceeded to break items in his room, also signifying anger. Thus, the record supports the trial court's determination that defendant acted out of anger rather than discipline.

¶ 22    Taking various comments of the court out of context, defendant contends that it created a *per se* rule that a slap to the face could never be appropriate discipline, but a reading of the record as a whole shows that the court was focused on defendant's anger. The trial court did not make express findings of fact about other factors raised by the case law, but when it addressed the motion to reconsider, the court did speak of an increased potential for injury from a slap. Further, every factor may not apply in every case, and the trial court need not expressly consider each factor. *Parrott*, 2017 IL App (3d) 150545, ¶ 28. "[S]imply because the court did not expressly note each factor does not mean it did not consider it," and the court is presumed to know the law and properly apply it. *Id.*

¶ 23    Citing cases from other jurisdictions, defendant argues that, when other states have considered the common-law standard of reasonableness of corporal punishment, slapping has not been found to be unreasonable parental discipline. See *State v. Stocker*, 976 P. 2d 399 (Haw. 1999), and *State v. Lefevre*, 2005-NMCA-101, 117 P.3d 980. However, as previously noted, the reasonableness of, and the necessity for, the discipline is to be determined by the finder of fact under the circumstances of each case. *Green*, 2011 IL App (2d) 091123, ¶ 24. Here, the trial court heard evidence that defendant acted in anger, showing a lack of discipline. Considering the evidence in the light most favorable to the State, a rational trier of fact could have found that the slap exceeded the bounds of reasonableness under the circumstances. Accordingly, the State proved defendant guilty beyond a reasonable doubt.

¶ 24 Defendant next contends that biting A.P. was an act of self-defense, precluding her conviction based on bodily injury. The State contends that the defense was not available because defendant provoked the incident and A.P. was entitled to defend his property.

¶ 25 "The elements of self-defense are (1) that unlawful force is threatened against a person; (2) that the person threatened is not the aggressor; (3) that the danger of harm is imminent; and (4) that the use of force was necessary." *People v. White*, 293 Ill. App. 3d 335, 338 (1997). A defendant may not claim self-defense when the perilous situation she encountered arose from her own aggressive conduct. See *id.* It also is not available in situations of "mutual combat" or when the defendant provoked the use of force against herself. See *id.* at 338-39. Even the mere utterance of words can qualify a defendant as the initial aggressor. *People v. De Oca*, 238 Ill. App. 3d 362, 367 (1992).

¶ 26 "Once raised, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the other elements of the offense beyond a reasonable doubt." *White*, 293 Ill. App. 3d at 338. "The standard of review for this element is the same as for every other element: whether any rational trier of fact could have found beyond a reasonable doubt that defendant was not acting in self-defense." *Id.*

¶ 27 Here, defendant was the initial aggressor when she slapped A.P. She then further provoked the use of force against herself by breaking items in A.P.'s room and taking his wallet. She argues that an exception applies because there was evidence that she could not breathe, making her use of force necessary. But, because defendant was the initial aggressor, she cannot claim that she bit A.P. in self-defense, unless (1) her son's headlock was a force so great that defendant reasonably believed that she was in imminent danger of death or great bodily harm, and (2) defendant exhausted every reasonable means to escape such danger. See 720 ILCS 5/7-4(c)(1) (West 2016).

Here, A.P. was clear in his testimony that he did not restrict defendant's airway when he put her in a headlock. Therefore, a reasonable trier of fact could have determined that defendant did not reasonably believe that she was in imminent danger of death or great bodily harm.

¶ 28    Citing parental tort immunity cases, defendant also argues that A.P. was not authorized to defend his property because defendant could assert parental authority over him or his property. But this ignores that defendant was the initial aggressor and provoked A.P.'s conduct. Although the trial court discussed self-defense primarily in the context of A.P.'s defense of property, it noted that defendant was the initial aggressor, and it received legal memoranda from the parties that also addressed defendant's role as an aggressor. The court is presumed to have known and followed the law. Thus, we do not decide how civil tort immunity regarding defense of property applies, as the evidence was sufficient to show that defendant could not assert self-defense because she provoked the incident.

¶ 29                              III. CONCLUSION

¶ 30    The evidence was sufficient to convict defendant beyond a reasonable doubt. Accordingly, the judgment of the circuit court of De Kalb County is affirmed.

¶ 31    Affirmed.